[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 11, 2007
THOMAS K. KAHN
CLERK

No. 06-16031
_____

D. C. Docket No. 05-00064-CV-WCO-2

DEBORAH PHILLIPS,

Plaintiff-Appellant,

versus

CITY OF DAWSONVILLE, a municipal corporation,
JOE LANE COX,
MIKE SOSEBEE,
MIKE WILSON,
TIM WIMPEY, et al.,
Individually and in their Official Capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 11, 2007)**

Before EDMONDSON, Chief Judge, CARNES and FAY, Circuit Judges.

PER CURIAM:

Plaintiff Deborah Phillips ("Plaintiff") appeals the district court's grant of summary judgment to the City of Dawsonville, its former and current mayors, and four city councilmen ("Defendants") against Plaintiff's section 1983 claim of retaliatory discharge in violation of Plaintiff's First Amendment right to free speech. No First Amendment cause of action has been presented. We affirm the judgment.

## I. Background

Plaintiff served as City Clerk of Dawsonville from September 2000 until the City Council unanimously voted not to reappoint her in January 2004. The City Clerk's term of office is one year. Plaintiff had been reappointed in February 2002 and January 2003.

While City Clerk, Plaintiff became aware of several instances of what she believed to be inappropriate conduct on the part of then Mayor Gilleland. Plaintiff discovered that Gilleland had charged the city for a car battery purchased for his personal car and for lumber purchased for his personal use. Plaintiff discussed the car-battery issue with a Councilman, the city attorney, the city's water and sewer

2

superintendent, and the city's assistant clerk. The Councilman confronted Gilleland about the car battery; and Gilleland agreed to pay the invoice. In late 2002, Plaintiff confronted then Mayor Gilleland about his lumber purchase. As before, Gilleland paid the invoice. Plaintiff discussed this issue with the city attorney.

Plaintiff also came to believe that then Mayor Gilleland was improperly using city-owned property. Plaintiff discussed her suspicions with a Councilman, an employee in the city's water and sewer department, and the city attorney. Plaintiff also reported concerns about the storage of a city-owned truck on Gilleland's property to a Councilman, the city's auditor, and the city attorney.

Plaintiff spoke with the city attorney and a member of City Council about then Mayor Gilleland's seemingly taking for his own benefit the labor of a city employee and of a county prisoner on loan to the City. Also, Plaintiff became aware of claims made by the assistant city clerk that Gilleland had sexually harassed her. Nothing indicates that Plaintiff ever communicated her concerns about the then Mayor's conduct to anyone outside of the city's employment.

In June or July 2003, two Councilmen met with then Mayor Gilleland, Plaintiff, as well as the city attorney and a special legal counsel for Dawsonville to

discuss the allegations about Gilleland's conduct. Gilleland resigned shortly thereafter.

In November 2003, Joe Lane Cox was elected Mayor of Dawsonville. Before his election, Mayor Cox told Jonathan Cox (a City Council member) that Mayor Cox intended to replace the existing city staff with people of his own choosing, just as he had done when he had been elected probate judge and county commissioner. After he was elected, Mayor Cox met with the members of the City Council—Jonathan Cox, Tim Wimpey, Mike Wilson and Mike Sosebee—to seek their support in replacing the city's staff, including Plaintiff.

In January 2004, the City Council unanimously voted not to reappoint Plaintiff as City Clerk. Mayor Cox did not vote. Each member of the City Council indicated in his testimony that his vote not to reappoint Plaintiff was based upon a desire to allow Mayor Cox to hire his own staff.

In 2005, Plaintiff initiated this suit against the 2004 City Council members, Mayor Cox, former Mayor Gilleland, and the City of Dawsonville. She contends that her non-appointment constitutes an unlawful retaliation.

Defendants moved for summary judgment. The district court granted summary judgment to Defendants on the basis that Plaintiff was not speaking as a citizen on a matter of public concern and so was entitled to no First Amendment

protection. The district court also concluded that Plaintiff failed to offer evidence showing that her speech was a substantial factor in the decision not to reappoint her and concluded that Defendants established the City Council had a legitimate and independent basis not to reappoint Plaintiff. Plaintiff appeals the district court's decision.

## II. Discussion

We review a district court order granting summary judgment de novo, viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party. Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.

For a public employee to sustain a retaliation claim for speech protected under the First Amendment, the employee must establish, among other things, that the employee spoke as a citizen on a matter of public concern. Battle v. Bd. of Regents, 468 F.3d 755, 759–60 (11th Cir. 2006) (citing Anderson v. Burke County, 239 F.3d 1216, 1219 (11th Cir. 2001)). The Supreme Court in Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006), established "that when public employees

make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."

Here, Plaintiff served as the City Clerk and City Treasurer. City Charter, City of Dawsonville, HB 1887, 1995-1996 Sess. § 3.13 (Ga. 1996) ("The council may appoint a city clerk, who shall also serve as the city treasurer."). The position of City Clerk is created by law and is mentioned, in the City of Dawsonville Charter, alongside the City Manager and City Attorney. City Charter, City of Dawsonville, HB 1887, 1995-1996 Sess. § 3.1 (Ga. 1996) . Plaintiff was supervised by and reported directly to the Mayor.

As detailed in the city clerk job description, Plaintiff was responsible for "the collection, custody, accounting and disbursement of [all City] funds." Plaintiff acknowledges that her duties also included keeping the Mayor and the Council informed of the financial condition of the city. "Considerable knowledge of municipal laws, policies, codes, [and] regulations" is listed in the job description as necessary to the position of City Clerk. Plaintiff further admitted that her duties included, but were not limited to, "serving as 'City election superintendent'"; "supervising 'accounting and clerical staff'"; "assisting in

6

'preparation of budget estimates'", and "performing 'other duties [] as requested by Mayor and Council or required by law, City ordinance or resolution.'"

Plaintiff claims retaliation based upon her disclosures about former Mayor Gilleland's conduct while in office. These allegations relate to the use of City funds to purchase a car battery and lumber; to the storage of City property at his home; to the use of city and county labor (on loan to the City) for the Mayor's private benefit; and to the sexual harassment of an employee who was Plaintiff's assistant and under Plaintiff's general supervision.

All these allegations touch on a misuse of City resources—money, services, or property—for the Mayor's private gain or on potential city liability or both.[1] Although her enumerated duties did not specify reporting misconduct by the Mayor, it was within her official duties to inquire about and make statements on the potentially inappropriate use of the City resources. Plaintiff's reports to other persons associated with the City government about Mayor Gilleland's breach of his own fiduciary duty to the City were pursuant to her official duties, given her

---

[1]Plaintiff's statements about the assistant city clerk's allegations of sexual harassment touched on a potential liability for the City and involved Plaintiff's duties as a supervisor of "accounting and clerical staff."

position as both City Clerk and City Treasurer.[2] Litigation involving the Mayor might have a significant impact on City funds.

Plaintiff contends that reporting her concerns about Gilleland's behavior is protected by the First Amendment; she stresses that her speech—reporting the then Mayor's seeming misconduct—fell outside the scope of her official enumerated duties. But we conclude she was speaking in accord with her duty as the City Clerk and not as a private citizen. The Court in Garcetti wrote that a public employee's duties are not limited only to those tasks that are specifically designated. 126 S. Ct. at 1962 ("[T]he listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."). The appropriate inquiry, the Court directed, is a pragmatic one. Id. at 1961; see also D'Angelo v. Sch. Bd. of Polk County, Fla., – F.3d – (11th Cir. 2007) (affirming judgment as a matter of law in favor of defendant school board where a principal alleged retaliation for his efforts to

_____

[2]This Court does not decide today whether, as suggested by the District Court, all city employees owe a duty of loyalty to the city as a matter of Georgia state law. Plaintiff's position as City Clerk distinguishes her from city employees with more narrow duties; we only address the circumstances before us now.

convert his school into a charter school even though there was no assigned duty to pursue charter conversion).

Plaintiff's appointed position as City Clerk gave her some control over and accountability for City funds and placed her in a supervisory role over some staff. We conclude that the reporting here of the improper use of city resources and of behavior that might well result in expense and even liability for the City was speech pursuant to Plaintiff's official duties. She is, therefore, entitled to no First Amendment protection for this speech.

We conclude that, because the First Amendment does not protect a government employee fulfilling official responsibilities, Plaintiff's retaliation claim must fail. See Garcetti, 126 S. Ct. at 1961; Battle v. Bd. of Regents, 468 F.3d 755, 761-62 (11th Cir. 2006).[3]

**AFFIRMED.**

---

[3]We conclude that Plaintiff has not been deprived of her First Amendment right to free speech. Under the circumstances, we also conclude that the preexisting law at the time of the pertinent reappointment decision was unclear on whether the First Amendment would be violated if Plaintiff were not reappointed. Qualified immunity would protect the individual defendants if they were otherwise liable.