[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2009
THOMAS K. KAHN
CLERK

No. 08-10922
Non-Argument Calendar

_____

D. C. Docket No. 06-01626-CV-T-27-MAP

MARY WHITE,

Plaintiff-Appellant,

versus

SCHOOL BOARD HILLSBOROUGH COUNTY, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Mary White, proceeding pro se and in forma pauperis, appeals the district court's final order granting the School Board of Hillsborough County, Florida's (the "School Board") motion for summary judgment on White's 42 U.S.C. § 1983 First Amendment retaliation and state law defamation claims. On appeal, White

argues that the district court erred in granting summary judgment in favor of the School Board because: (1) there were multiple procedural errors committed by the School Board and the district court during the summary judgment stage of the case; (2) there were conflicting facts as to whether White was an independent contractor for purposes of determining whether White engaged in protected speech, an element of her First Amendment retaliation claim; and (3) the district court erroneously found that the statements at issue were subject to a qualified privilege, a defense to her defamation claim. After thorough review, we affirm.[1]

We review an order granting summary judgment de novo, viewing all the facts in the record in the light most favorable to the non-moving party. Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1161-62 (11th Cir. 2006). Moreover, "pro se pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally." Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir.), cert. denied, (U.S. Dec. 1, 2008) (No. 08-6426).

The relevant facts are these. White was the founder and director of Wilbesan Charter School, and in April 2003, signed the charter contract with the School Board on behalf of the school. Almost immediately after Wilbesan opened, problems began. In August 2003, the School Board denied a request by White for

---

[1] In addition, White's motion to file a reply brief out of time is GRANTED.

a waiver of the teacher certification requirements for a vocational teacher, on the ground that the teacher in question did not meet the requirements for any course taught in Wilbesan's curriculum. In January 2004, School Board employees conducted a review of Wilbesan's operations, and after an audit by an outside accounting firm, asked Wilbesan to prepare a corrective action plan to address its deficit. In February 2004, a social worker working with the school wrote a memorandum to the School Board, and expressed concerns over her safety and that of her fellow employees, noting that White "has demonstrated a history of being mentally unstable as observed by other charter office staff." Sometime later, White wrote a letter to the School Board alleging that a fire safety inspection report on the school was false because the school had changed locations. A subsequent county fire inspection of the new facility found significant deficiencies and ordered the school not to open until they were corrected. The school opened the following day, and the county fire marshal issued a cease and desist order to the school. The School Board superintendent notified White that the school was closed effective immediately following the issuance of the cease and desist order, and that the superintendent was recommending that the charter be terminated based on concerns for the health and safety of the students and the school's "disregard for the School Board's directives and applicable state law."

3

White thereafter filed this lawsuit against the School Board, asserting, inter alia, First Amendment retaliation and state law defamation claims. The district court dismissed several of White's claims, and ultimately granted summary judgment to the School Board on White's remaining claims. This appeal follows.

First, we are unpersuaded by White's claim that the School Board's motion for summary judgment failed to comply with the requirements of Federal Rule of Civil Procedure 56 and that the district court erred in ordering the School Board to amend its motion to correct record cites and in ordering both parties to file supplemental briefs. "[S]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Brooks, 446 F.3d at 1162 (quoting Fed. R. Civ. P. 56(c)). "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). The Supreme Court has held that Rule 56 does not require "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986) (emphasis in original). "[R]egardless of whether the moving party accompanies its

4

summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

The record here shows that the School Board's brief complied with the requirements of Rule 56(c). Moreover, the district court committed no error in ordering the School Board to correct its record citations, and the School Board's amended brief was otherwise identical to its original one. In addition, the court ordered both parties to file supplemental briefs addressing the applicability of the law governing the speech of public employees, and White in fact filed a supplemental brief on this very issue. The district court thus did not commit any procedural errors in ruling on summary judgment.

Next, we reject White's claim that the district court erred in granting summary judgment on her First Amendment retaliation claim. To state a First Amendment retaliation claim, a plaintiff must first establish that she engaged in constitutionally protected speech. See Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). However, the government is afforded broader discretion in regulating the speech of public employees than that of its citizenry. Boyce v. Andrew, 510 F.3d 1333, 1341 (11th Cir. 2007). So, "for a government employee's speech to have First Amendment protection, the employee must have (1) spoken as

a citizen and (2) addressed matters of public concern." Id. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

Moreover, the Supreme Court has held that government contractors are protected under the First Amendment from retaliatory government action to the same extent as government employees. Bd. of County Com'rs, Wabaunsee County, Kan. v. Umbehr, 518 U.S. 668 (1996). In Umbehr, the plaintiff contracted with a county board of commissioners to haul trash for cities within the county, and alleged that his contract was terminated in retaliation for his public criticism of the board. Id. at 671-72. The Court held that an independent contractor's speech is protected subject to the same restrictions on the speech of public employees, because the government has similar interests in both contexts of being "free to terminate both employees and contractors for poor performance, to improve the efficiency, efficacy, and responsiveness of service to the public, and to prevent the appearance of corruption." Id. at 674. Accordingly, the government contractor, like the government employee, "must show that the termination of [her] contract was motivated by [her] speech on a matter of public concern[.]" Id. at 685.

6

As applied here, the district court did not err in determining that Umbehr applied to White's retaliation claim, as it was based solely on the termination of a contract -- the charter -- with the government. Id. Moreover, under Florida law a charter school is a public school and is subject to significant oversight by the sponsoring school district. See Fla. Stat. § 1002.33. Thus, the School Board, in exercising its contractual power and promoting the public service thereby provided, had at least the same interests as the commissioners in Umbehr that warrant deference to its decision to terminate the charter contract. See 518 U.S. at 678; see also Mangieri v. DCH Healthcare Authority, 304 F.3d 1072, 1074-76 (11th Cir. 2002) (applying Umbehr to a § 1983 claim by a physician against a state agency, where the physician alleged that the agency refused to renew the his contract to provide anesthesia services at a state hospital in retaliation for his speaking out about matters of public concern). Because Umbehr applies to White's retaliation claim, the statements for which she was allegedly retaliated against are subject to the restrictions applicable to the speech of public employees.

Applying these restrictions, we must determine whether White's statements were made in the course of her duties as director of the school or "as a citizen on a matter of public concern"; if the former, her speech is not protected by the First Amendment. Garcetti, 547 U.S. at 418, 421. On this record, there is no genuine

7

dispute that White's two statements -- (1) her letter requesting that the School Board waive certification requirements for a vocational teacher; and (2) her letter alleging that the fire safety inspector filed an "absolutely false" report on the school -- were made in the course of her duties as director of the school. This is true even if White had no formal duty to write the letters. Id. at 425 ("[T]he listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."); see also D'Angelo v. School Bd. of Polk County, Fla., 497 F.3d 1203, 1210 (11th Cir. 2007) (holding that principal allegedly terminated in retaliation for efforts to convert his school to a charter school made statements, in pursuit of the charter, in his capacity as principal and not as a citizen, even if he "was not expressly assigned the duty to pursue charter conversion"); Phillips v. City of Dawsonville, 499 F.3d 1239, 1242 (11th Cir. 2007) (holding that "a public employee's duties are not limited only to those tasks that are specifically designated"). This is also true even if she was making allegations of official misconduct. See Phillips, 499 F.3d at 1242-43 (holding that city clerk/treasurer's disclosures about the mayor's misuse of city resources were made pursuant to her official duties and not protected); see also Morris v. Crow, 142 F.3d 1379, 1381 (11th Cir. 1998) ("The fact that such

8

information may be of general interest to the public, however, does not alone make it of 'public concern' for First Amendment purposes."). We therefore affirm the grant of summary judgment on White's retaliation claim.

We likewise reject White's argument that the district court erred in granting summary judgment on her state law defamation claim. "To state a cause of action for defamation, in Florida, a plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." Valencia v. Citibank Int'l, 728 So. 2d 330 (Fla. Dist. Ct. App. 1999); see Rubin v. U.S. News & World Report, Inc., 271 F.3d 1305, 1306 (11th Cir. 2001). However, Florida law recognizes a qualified privilege for statements that meet the following requirements: "(1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner." Thomas v. Tampa Bay Downs, Inc. 761 So. 2d 401, 404 (Fla. Dist. Ct. App. 2000). "The publication may be qualifiedly privileged even if it is untrue." Demby v. English, 667 So. 2d 350, 353 (Fla. Dist. Ct. App. 1995). If the defendant establishes the existence of a qualified privilege, the plaintiff must demonstrate express malice, which requires a showing that "the primary motive for the statement [was] . . . an intention to injure the

9

plaintiff." Nodar v. Galbreath, 462 So. 2d 803, 806 (Fla. Dist. Ct. App. 1984).

As the record shows, the School Board asserted as an affirmative defense that the allegedly defamatory statements by the social worker were privileged as a matter of law, and articulated this argument in its motion for summary judgment. Yet White raised no argument in response to the School Board's qualified privilege claim, nor did she present any evidence to create a genuine issue as to whether the social worker's statements were made with express malice. Thus, the district court did not err in finding that the statements at issue were subject to a qualified privilege under Florida law, and that White had not demonstrated express malice to overcome the privilege. We therefore affirm the grant of summary judgment on White's defamation claim.[2]

**AFFIRMED.**

---

[2] White also alleged that she was defamed by a School Board director's statements regarding poor fiscal management at the school, but since she raised no argument to this effect on appeal, she has abandoned it. See Horsley v. Feldt, 304 F.3d 1125, 1131 n.1 (11th Cir. 2002).