[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15669
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-21709-KMW


DENNIS REEVES,

                                                          Plaintiff-Appellant,

versus

HORACE GRAHAM,
MIAMI-DADE COUNTY,

                                                          Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 6, 2014)

Before WILSON, ANDERSON and DUBINA, Circuit Judges.

PER CURIAM:

Dennis Reeves sued Horace Graham and Miami-Dade County under 42 U.S.C. § 1983, alleging retaliatory discharge in violation of the First Amendment. Reeves alleged that he was terminated from his position as a Metrorail security guard because he reported what he believed to be the use of excessive force by a local police officer.  Both defendants moved for summary judgment.  The district court granted both motions on the ground that Reeves made the report not as a citizen but "pursuant to [his] official duties."  Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct 1951, 1960 (2006).  Reeves appealed.  We agree that neither defendant is liable, on the alternative grounds of qualified immunity and failure to establish municipal liability.

## I.

Reeves worked as a private security guard for a government subcontractor providing security services at Metrorail stations in Miami-Dade County.  Reeves testified that, as part of his job, he was required to monitor the sidewalk and street adjacent to the Metrorail station to which he was assigned, in order to ensure the safety of incoming and outgoing patrons.  While on duty one evening, Reeves observed a local police officer using what Reeves believed to be excessive force during a traffic stop across the street from the Metrorail station.  Reeves allegedly yelled out to the officer, who stopped, and then called police dispatch using his personal cell phone in order to report the incident.  Reeves then called his

supervisor, allegedly so that he could be relieved while he spoke with an Internal Affairs officer who was en route.

Within fifteen days, Reeves had been removed from duty on the orders of Graham, a mid-level employee with the Miami-Dade Transit Agency.[1]  Graham had the authority to order Reeves's removal pursuant to a contract between the County and the security contractor.[2]  Reeves contends that he was removed from duty because his report created friction with local police.

The parties dispute the extent to which Reeves was required to report off-premises incidents as part of his job.  It is undisputed that Reeves was required to report on-premises criminal activity, by two-way radio, to the security contractor's dispatch office.  One of Reeves's superiors testified that Reeves was also required to report serious off-premises incidents so that the appropriate public safety agency could be notified.  Reeves testified that he had only a "civic duty" to report off-premises incidents, and that he was permitted to contact the appropriate public safety agency directly.  He has not disputed, however, that he was at least

---

[1]    Graham's title was "Security Manager."  He reported to the Security Chief, who reported to the Director.  The Director of the agency, in turn, reported to the Assistant County Manager, who reported to the County Manager.

[2]    A provision in the contract reserved to the County the "right to have the vendor relieve any employee from a duty assignment, and/or bar the employee from further service under the Contract at the discretion of the County Contract Administrator or designee."  Graham testified that he was the "designee."

3

permitted to report off-premises incidents through the security contractor's dispatch office.[3]

## II.

"We review a district court order granting summary judgment de novo, viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Phillips v. City of Dawsonville, 499 F.3d 1239, 1241 (11th Cir. 2007) (per curiam). "Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id.

## III.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[4] Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct 1951, 1960 (2006). Whether a public employee speaks pursuant to his official duties is a question of law. Vila v. Padrón, 484 F.3d 1334, 1339 (11th Cir. 2007). When there is room for serious

---

[3]    Reeves testified that on the night that he made the report, he followed "protocol" and did his job.

[4]    It is undisputed that the same rule applies to this case, even though Reeves was employed by a government subcontractor. See Bd. of Cnty. Comm'rs, v. Umbehr, 518 U.S. 668, 684-85, 116 S. Ct. 2342, 2352 (1996).

debate about the scope of an employee's duties, "[t]he proper inquiry is a practical one." Garcetti, 547 U.S. at 424, 126 S. Ct. at 1961.

Assuming arguendo that Graham violated a right secured by the First Amendment when he ordered that Reeves be removed from duty, Graham is entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[5] Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). "'Clearly established law' is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." Randall v. Scott, 610 F.3d 701, 715 (11th Cir. 2010) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002)).

Reeves had the burden of showing that Graham was not entitled to qualified immunity. See Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009). He has failed to uphold that burden. Reeves argues that the law "clearly established" that he made the report as a citizen rather than as a security guard for First Amendment purposes. In support, Reeves maintains that he was not required to report off-premises incidents. An employee may speak pursuant to his official

---

[5] It is undisputed that Graham ordered Reeves's removal in the performance of a "discretionary function."

5

duties, however, even when he is not required to speak at all, at least where the speech "owe[s] its existence to the performance of [his] official responsibilities." Abdur-Rahman v. Walker, 567 F.3d 1278, 1286 (11th Cir. 2009). Reeves emphasizes that he made the report using his personal cell phone and that he reported the incident outside of the normal chain of command. Under the circumstances, these procedural deviations were insufficient to give Graham "fair notice" that Reeves (we assume) made the report as a citizen rather than as a security guard. See Abdur-Rahman, 567 F.3d at 1284 ("We have consistently discredited narrow, rigid descriptions of official duties urged upon us to support an inference that public employees spoke as private citizens.").[6]

## IV.

Assuming arguendo that Reeves established a First Amendment violation, he has likewise failed to establish that the County is liable for it. Municipal liability under 42 U.S.C. § 1983 "may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over

---

[6]    Although Reeves initially argued in the district court that, even if Graham was entitled to qualified immunity, that defense would not protect him from equitable relief, Graham responded that he was merely a mid-level employee for the County and could not order the reinstatement that Reeves sought, especially because Reeves was not even a County employee but rather was an employee of the County's subcontractor. For the first time on appeal, Reeves argues in his reply brief that at least there could be equitable relief in the form of an injunction requiring Graham to "rescind his removal decision." We decline to address this argument made for the first time on appeal.

the relevant subject matter." Scala v. City of Winter Park, 116 F.3d 1396, 1397 (11th Cir. 1997). "[T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." Id. at 1399 (alteration in original) (quoting Mandel v. Doe, 888 F.2d 783, 792 (11th Cir. 1989)). Final policymaking authority may be delegated through positive law or through "customs and practices having the force of law." Mandel, 888 F.2d at 793.

Reeves failed to establish that Graham had the requisite policymaking authority. At the time of Reeves's removal, Graham was a mid-level employee in the Miami-Dade Transit Agency. A contract between the County and the security contractor empowered him to order Reeves's removal, but—as the County correctly observes—it did not purport to render his decisions unreviewable within the County hierarchy. Nor has Reeves established a custom or practice of deferring to Graham's decisions. See Mandel, 888 F.2d at 794 & n.18 (cataloguing evidence sufficient to establish such delegation). Reeves highlights testimony in which Graham acknowledges himself as the "decision-maker" with "final approval," but in each such instance, Graham appears to refer to his authority under the contract rather than within the County hierarchy. In any event, these

7

snippets of testimony are insufficient to establish that Graham had unreviewable discretion in his administration of the contract.

**AFFIRMED.**