07-2376-cv
Weintraub v. Board of Education of the City School District of
the City of New York


UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT
_____

August Term 2008

(Argued: November 25, 2008      Decided: January 27, 2010)

Docket No. 07-2376-cv

--------------------------------------------------------x

DAVID H. WEINTRAUB,

    Petitioner-Appellant,

-- v. --

BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE
CITY OF NEW YORK, COMMUNITY SCHOOL DISTRICT 32, CITY
OF NEW YORK, DOUGLAS GOODMAN, DAISY O'GORMAN, FELIX
VAZQUEZ, FRANK MILLER, AIDA SERRANO, LAWRENCE BECKER,
JERRY CIOFFI,

    Respondents-Appellees.*

--------------------------------------------------------x

B e f o r e :  JACOBS, Chief Judge, WALKER, and CALABRESI,
Circuit Judges.

Petitioner-Appellant David H. Weintraub, a former New York

City public school teacher, appeals from an order of the United

States District Court for the Eastern District of New York (I.

Leo Glasser, Judge), inter alia, dismissing his claim that

Respondents-Appellees violated his First Amendment rights by

retaliating against him based on his filing of a formal grievance

---

        *        The Clerk of Court is directed to amend the caption as noted.

1

with his union. Weintraub filed the grievance to challenge the school administration's refusal to discipline a student who threw books at Weintraub during class. The district court dismissed Weintraub's claim in light of Garcetti v. Ceballos, 547 U.S. 410 (2006), which held that the First Amendment does not protect speech made pursuant to a public employee's official duties. We find that Weintraub filed his grievance pursuant to his official duties because the grievance was in furtherance of one of his core duties as a public school teacher, maintaining class discipline, and had no relevant analogue to citizen speech. Accordingly, we hold that, under Garcetti, the First Amendment does not protect Weintraub's filing of a grievance and conclude that the district court properly dismissed his claim of retaliation. We AFFIRM the district court's order.

Judge Calabresi dissents in a separate opinion.

RICHARD A. ENGELBERG, Kreines & Engelberg, Mineola, NY, for Petitioner-Appellant.

EDWARD F.X. HART (Leonard Koerner, on the brief), of Counsel, for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, for Respondents-Appellees.

JOHN M. WALKER, JR., Circuit Judge:

Petitioner-Appellant David H. Weintraub, a former New York City public school teacher, appeals from an order of the United States District Court for the Eastern District of New York (I.

2

Leo Glasser, Judge), inter alia, dismissing his First Amendment employment retaliation claim against Respondents-Appellees the Board of Education of the City School District of the City of New York, Community School District 32, the City of New York, Douglas Goodman, Daisy O'Gorman, Felix Vazquez, Frank Miller, Aida Serrano, Lawrence Becker, and Jerry Cioffi (collectively, "Defendants"). Weintraub alleged that Defendants violated his First Amendment rights by retaliating against him for filing a formal grievance with his union that challenged the school assistant principal's decision not to discipline a student who had thrown books at Weintraub during class. The district court dismissed Weintraub's claim in light of Garcetti v. Ceballos, 547 U.S. 410 (2006), which held that the First Amendment does not protect speech made pursuant to a public employee's official duties.

We find that Weintraub's filing of the grievance was in furtherance of one of his core duties as a public school teacher, maintaining class discipline, and had no relevant analogue to citizen speech. Accordingly, we conclude that, under Garcetti, 547 U.S. at 421-24, Weintraub filed the grievance "pursuant to [his] official duties," and thus, not as a citizen for purposes of the First Amendment. The grievance, therefore, is not protected speech, and we affirm the district court's dismissal of Weintraub's retaliation claim.

**BACKGROUND**

3

The underlying facts and procedural history of this case are detailed in the district court's April 28, 2006 opinion that granted in part and denied in part Defendants' motion for summary judgment.  See Weintraub v. Bd. of Educ. of City of N.Y., 423 F. Supp. 2d 38, 42-48 (E.D.N.Y. 2006) ("Weintraub I").  We set forth below only such facts as are relevant to this appeal.

**I.   Underlying Events**

In September 1998, Weintraub began teaching fifth grade at P.S. 274, a public school in Brooklyn, New York.  During his first two months, there were no apparent problems in his class, with his performance, or between Weintraub and school administrators.

On Friday, November 6, 1998, after a student threw a book at him during class, Weintraub referred the student to his immediate supervisor, Assistant Principal Douglas Goodman.  Shortly thereafter, Goodman returned the student to Weintraub's classroom.  The next school day, the same student threw additional books at Weintraub.  Weintraub again referred the student to Goodman, who returned the student to Weintraub's class.

Weintraub was "upset" by Goodman's decision not to discipline the student and concerned that "if this child could do this to [Weintraub], . . . it would put the . . . other students at risk."  (Pl.'s Dep. 51:17-19, Jul. 19, 2002.)  Weintraub subsequently learned that the same student "put a kid in the

hospital later in the year." (Pl.'s Dep. 51:20-21, 23-25.) After the second book-throwing incident, Weintraub told Goodman, "If nothing is going to be done, I [will] have to file a grievance with the union to have something done about this because [the student] should be suspended for this," (Pl.'s Dep. 43:3-6), and "it is not an environment a teacher would want to go to where a child is allowed to throw a book at teachers," (Pl.'s Dep. 47:10-12). Weintraub also "underst[oo]d" that under "citywide Board of Education policy . . . a student assaulting the teacher in 5th grade . . . should have been suspended." (Pl.'s Dep. 44:3-6.) Weintraub told other teachers at P.S. 274 about the incidents and his intention to file a grievance, and then filed the grievance with his union representative.

Weintraub alleges that because of his complaints, including his grievance, Goodman and other school officials retaliated against him through "acts of intimidation, harassment, workplace abuse, and deliberate attempts to undermine [his] authority." Weintraub I, 423 F. Supp. 2d at 42. Specifically, Weintraub avers that he received unfounded negative classroom evaluations, performance reviews, and disciplinary reports; was wrongfully accused of sexually abusing a student and abandoning his class; was arrested for misdemeanor attempted assault of another teacher at P.S. 274 on allegedly false grounds; and was ultimately terminated. After the criminal charges against him were dropped, Weintraub was denied reinstatement to teach and unsuccessfully

sought review of his dismissal in state court.

**II.  District Court Proceedings**

In July 2000, Weintraub commenced this action in the Eastern District of New York asserting several claims against Defendants, including adverse employment retaliation in violation of the First Amendment.  Defendants moved for summary judgment on all of Weintraub's claims.

On April 28, 2006, the district court denied Defendants' motion with respect to Weintraub's First Amendment claim, reasoning that "the content of speech questioning an administrative response, or lack thereof, to discipline problems in the classroom relates to a matter of public concern, regardless of whether that speech comes from a[n] elected official, citizen, or teacher."  Id. at 52.  Finding that the "form and context of Weintraub's statements" did not warrant a finding to the contrary, and that Weintraub's "primary motivation was a general concern for safety in the classroom and school," rather than "a desire for some personal gain," the district court held that "Weintraub's complaint to Goodman and subsequent grievance were protected by the First Amendment."  Id.

On May 29, 2007, after Defendants moved for reconsideration in light of the Supreme Court's subsequent decision in Garcetti, 547 U.S. at 421-24, the district court granted in part and denied in part Defendants' motion for summary judgment with respect to Weintraub's First Amendment claim.  The district court identified

6

three categories of speech for which Weintraub could "plausibly claim retaliation":

> (1) [his] private conversation with Goodman in which he expressed his dissatisfaction with Goodman's handling of the book-throwing incidents and threatened to file a grievance if the situation was not rectified; (2) Weintraub's conversations with other teachers about the incidents and Goodman's failure to impose adequate discipline; and (3) the formal grievance itself.

Weintraub v. Bd. of Educ. of City of N.Y., 489 F. Supp. 2d 209, 214 (E.D.N.Y. 2007) ("Weintraub II").

The district court denied summary judgment with respect to the second category, because "Weintraub's conversations with other teachers about his conflict with Goodman . . . [we]re clearly not within the scope of his employment duties." Id. at 220.

In contrast, the district court concluded that under Garcetti and in light of cases from other circuits applying Garcetti in similar situations, the First Amendment does not protect the first and third categories of speech: "In both instances, Weintraub was speaking as an employee, proceeding through official channels to complain about unsatisfactory working conditions." Id. at 219-20. The district court, however, believed that "a substantial ground for difference of opinion may exist on" the precise issue of "whether a public employee acts as an 'employee,' and not as a 'citizen,' when he notifies his supervisors, either formally or informally, of an

issue regarding the safety of his workplace that touches upon a matter of public concern, as well as on the employee's own private interests." Id. at 221-22. The district court noted that the issue was one of first impression in this circuit. The district court then dismissed Weintraub's First Amendment claims based on his conversation with Goodman and his filing of a grievance. The district court encouraged Weintraub to file an interlocutory appeal on the basis that the case involves a controlling question of law for which there is substantial ground for difference of opinion, and stated its intent to stay the action pending the outcome of any such appeal.

Pursuant to 28 U.S.C. § 1292(b), we accepted Weintraub's interlocutory appeal, which is limited to the question of whether the First Amendment protects his filing of a grievance. We now examine his claim.

**DISCUSSION**

We review de novo the district court's partial grant of summary judgment, construing the evidence in the light most favorable to the non-moving party. See Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), and accordingly, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986).

"Regardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment." Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008). Under the First Amendment, "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti, 547 U.S. at 417; see also Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 568 (1968); Connick, 461 U.S. at 147. A public employee, however, must "by necessity . . . accept certain limitations on his or her freedom," because, his or her speech can "contravene governmental policies or impair the proper performance of governmental functions." Garcetti, 547 U.S. at 418-19. The Supreme Court's employee-speech jurisprudence reflects "the common sense realization[s] that government offices could not function if every employment decision became a constitutional matter," and that "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Connick, 461 U.S. at 143, 146. Accordingly, the Supreme Court has strived "to arrive at a balance between the interests of the teacher, as

a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568.

In Garcetti, the Supreme Court, while keeping "these principles in mind," 547 U.S. at 420, "'narrowed the Court's jurisprudence in the area of employee speech' by further restricting the speech activity that is protected." Reilly v. City of Atl. City, 532 F.3d 216, 228 (3d Cir. 2008) (quoting Foraker v. Chaffinch, 501 F.3d 231, 241 (3d Cir. 2007)). Garcetti involved a deputy district attorney's memorandum to his supervisor expressing his view that an affidavit used to obtain a search warrant contained serious misrepresentations. 547 U.S. at 414. Garcetti explained that "[u]nderlying [the Supreme Court's employee-speech jurisprudence] has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" Id. at 420 (quoting Connick, 461 U.S. at 154). Specifically, Garcetti "h[e]ld that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421.

"If [we] determine[] that [Weintraub] either did not speak as a citizen or did not speak on a matter of public concern,

'[he] has no First Amendment cause of action based on his . . . employer's reaction to the speech.'" Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (quoting Garcetti, 547 U.S. at 418). We hold that Weintraub, by filing a grievance with his union to complain about his supervisor's failure to discipline a child in his classroom, was speaking pursuant to his official duties and thus not as a citizen. Accordingly, Weintraub's speech was not protected by the First Amendment, and there is no cause for us to address whether it related to a "matter of public concern." See id.; see also Garcetti, 547 U.S. at 421 (finding "the controlling factor" to be whether the employee-speech at issue was made pursuant to official duties and declining to examine whether it related to an issue of public concern).

The Garcetti Court defined speech made "pursuant to" a public employee's job duties as "speech that owes its existence to a public employee's professional responsibilities." 547 U.S. at 421. In Garcetti, this inquiry was straightforward because the plaintiff admitted that his speech was part of his official job duties. See id. at 424. In the instant case, Weintraub asserts that he did not file his grievance pursuant to his official duties. Instead, he contends that "[t]he key" to the First Amendment inquiry provided by Garcetti is whether he was "required, as part of his employment duties to initiate grievance procedures against . . . Goodman." (Appellant's Br. at 11 (emphasis in original).) Weintraub further alleges that

11

Defendants have pointed to no "rule or regulation of the Board of Education, federal or state statute, job handbook or other job description, [that] state[s] unequivocally that the speech for which [Weintraub] claims he was retaliated against" was made pursuant to his official duties as a public school teacher. (Appellant's Reply Br. at 8.)

We are unpersuaded. The objective inquiry into whether a public employee spoke "pursuant to" his or her official duties is "a practical one." Garcetti, 547 U.S. at 424. The Garcetti Court cautioned courts against construing a government employee's official duties too narrowly, underscoring that

> [f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

Id. at 424-25. In light of Garcetti, other circuit courts have concluded that speech that government employers have not expressly required may still be "pursuant to official duties," so long as the speech is in furtherance of such duties, e.g., Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007).

In Williams, the Fifth Circuit concluded that the plaintiff, an Athletic Director, wrote memoranda to his school principal and office manager requesting information about the use of funds

12

collected at athletic events in order to perform his duties of buying sports equipment, taking students to tournaments, and paying their entry fees. 480 F.3d at 693-94. The Williams court explained that "[s]imply because [the plaintiff] wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job"; instead, "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties." Id.

Similarly, in Renken v. Gregory, 541 F.3d 769 (7th Cir. 2008), the Seventh Circuit held that when a professor complained to university officials about the difficulties he encountered in administering an educational grant he had been awarded, he was speaking as a faculty employee because the grant, though not necessarily a formal requirement of his job, was "for the benefit of students" and therefore "aided in the fulfillment of his teaching responsibilities." Id. at 773. See also Mills v. City of Evansville, 452 F.3d 646, 648 (7th Cir. 2006) (same for a public officer's negative remarks following an official meeting to discuss plans for department reorganization, because the comments were made "in her capacity as a public employee contributing to the formation and execution of official policy"). The Ninth, Tenth, and Eleventh Circuits have drawn similar conclusions, finding that "a public employee's duties are not limited only to those tasks that are specifically designated," Phillips v. City of Dawsonville, 499 F.3d 1239, 1242 (11th Cir.

13

2007). See, e.g., Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1204 (10th Cir. 2007) (holding that teachers spoke pursuant to their job duties when they discussed the school academy's expectations regarding student behavior, curriculum, pedagogy, and classroom-related expenditures); Freitag v. Ayers, 468 F.3d 528, 546 (9th Cir. 2006) (same for a prison guard's internal complaints documenting her superior's failure to respond to inmates' sexually explicit behavior towards her); Battle v. Bd. of Regents, 468 F.3d 755, 761 (11th Cir. 2006) (same for university employee's report alleging improprieties in her supervisor's handling and management of federal financial aid funds).

We join these circuits and conclude that, under the First Amendment, speech can be "pursuant to" a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer. In particular, we conclude that Weintraub's grievance was "pursuant to" his official duties because it was "part-and-parcel of his concerns" about his ability to "properly execute his duties," Williams, 480 F.3d at 694, as a public school teacher -- namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning. See, e.g., Brammer-Hoelter, 492 F.3d at 1204 ("[A]s teachers, Plaintiffs were expected to regulate the behavior of their students."). As in Renken and

14

_Williams_, Weintraub's speech challenging the school administration's decision to not discipline a student in his class was a "means to fulfill," 541 F.3d at 774, and "undertaken in the course of performing," 480 F.3d at 693, his primary employment responsibility of teaching.

Judge Calabresi's dissent questions whether our decision today conflicts with the result in _Givhan v. Western Line Consolidated School District_, 439 U.S. 410 (1979).  Dissent of J. Calabresi at **[5]**.  It does not.  In _Givhan_, a junior-high English teacher was dismissed primarily because she internally aired her grievances regarding the placement of black people working in the cafeteria, the integration of the administrative staff, and the placement of black Neighborhood Youth Corps workers in semi-clerical positions.  See _id._ at 411; _Ayers v. W. Line Consol. Sch. Dist._, 555 F.2d 1309, 1313 (5th Cir. 1977).  Givhan expressed concern with the impression that the "respective roles of whites and blacks" in these positions would leave on black students.  _Ayers_, 555 F.2d at 1313.  From our brief recitation of the facts of _Givhan_, it is plain that, unlike here, the grievance she aired was not in furtherance of the execution of one of her core duties as an English teacher.  Givhan's grievance concerned the general impression that blacks students might take away from the staffing of non-teaching positions; Weintraub's grievance, in contrast, concerns the administration's refusal to discipline a student who threw books at Weintraub during class.

15

Our conclusion that Weintraub spoke pursuant to his job duties is supported by the fact that his speech ultimately took the form of an employee grievance, for which there is no relevant citizen analogue. The Garcetti Court drew a distinction between the unprotected speech at issue in that case, and "public statements outside the course of performing [an employee's] official duties" which "retain some possibility of First Amendment protection." 547 U.S. at 423. While "[t]he First Amendment protects some expressions related to the speaker's job," id. at 421, "[w]hen a public employee speaks pursuant to employment responsibilities, . . . there is no relevant analogue to speech by citizens who are not government employees," id. at 424. Garcetti provided two examples of speech with a citizen analogue: (1) a schoolteacher's "letter to a local newspaper," which the Supreme Court held to be protected in Pickering, because it had "no official significance and bore similarities to letters submitted by numerous citizens every day," and (2) "discussi[ons of] politics with a co-worker." Id. at 422-23. Although the lack of a citizen analogue is "not dispositive" in this case, id. at 420, it does bear on the perspective of the speaker -- whether the public employee is speaking as a citizen -- which is the central issue after Garcetti, see Williams, 480 F.3d at 692 (stating that "[u]nder Garcetti, we must shift our focus from the content of the speech to the role the speaker occupied when he said it" to determine whether the speaker was

16

"acting in her role as 'citizen'").

In <u>Freitag v. Ayers</u>, 468 F.3d 528 (9th Cir. 2006), the Ninth Circuit shed light on when a relevant analogue to citizen speech exists. The <u>Freitag</u> court focused on a former prison guard's "responsibility <u>as a citizen</u> to expose . . . official malfeasance" in holding that the First Amendment protected her complaints to a state senator and the Inspector General's office about her superior's failure to respond to inmates' sexually explicit behavior towards female guards. <u>Id.</u> at 545 (emphasis in original). The <u>Freitag</u> court emphasized that there was a relevant citizen analogue to the employee's speech, because the "right to complain both to an elected public official and to an independent state agency is guaranteed to any citizen in a democratic society regardless of his status as a public employee." <u>Id.</u>

The lodging of a union grievance is not a form or channel of discourse available to non-employee citizens, as would be a letter to the editor or a complaint to an elected representative or inspector general. Rather than voicing his grievance through channels available to citizens generally, Weintraub made an internal communication made pursuant to an existing dispute-resolution policy established by his employer, the Board of Education. <u>Cf.</u> <u>Boyce v. Andrew</u>, 510 F.3d 1333, 1343-44 (11th Cir. 2007) (finding that the "form and context" of the employees' complaints, which were made directly to supervisors and were not

"sent to an outside entity," weighed against First Amendment protection). As with the speech at issue in Garcetti, Weintraub could only speak in the manner that he did by filing a grievance with his teacher's union as a public employee. Cf. Davis v. McKinney, 518 F.3d 304, 313 (5th Cir. 2008) (compiling cases "holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job"). His grievance filing, therefore, lacked a relevant analogue to citizen speech and "retain[ed no] possibility" of constitutional protection. Garcetti, 547 U.S. at 423.

Notwithstanding the Supreme Court's pronouncement in Garcetti, Weintraub urges us to find that his speech is protected by the First Amendment under Cioffi v. Averill Park Central School District Board of Education, 444 F.3d 158 (2d Cir. 2006), a case we decided two months before the Supreme Court issued its decision in Garcetti. In Cioffi, we held that the First Amendment protected a high school athletic director's letter to his supervisor and to the school board criticizing the school district's handling of a sexual harassment and hazing incident. Id. at 161-65. Weintraub directs us to a footnote in Cioffi opining that "[t]he Supreme Court's forthcoming decision in Garcetti . . . as to whether the First Amendment protects an employee's purely job-related speech . . . does not affect the disposition of [Cioffi's] case because the record here

18

establishes that Cioffi's speech was not made strictly pursuant to his duties as a public employee." (Appellant's Br. at 15 (quoting Cioffi, 444 F.3d at 167 n.3) (emphases in Appellant's Brief).)

We are not persuaded that Cioffi compels us to find that the First Amendment protects Weintraub's filing of a grievance. In Cioffi, we held that a letter that an athletic director wrote to his supervisor and to the school board was protected speech. Id. at 161, 165. The speech at issue in Cioffi had been publicly disclosed and the athletic director subsequently pursued the public controversy in a press conference; thus, the "public's interest in receiving the well-informed views" of the athletic director, as a government employee, Garcetti, 547 U.S. at 419, was strong. In contrast, Weintraub never communicated with the public about the book-throwing incidents and the school administration's subsequent refusal to discipline the particular student. Accordingly, we remain convinced that under Garcetti, because Weintraub made his statements "pursuant to" his official duties as a schoolteacher, he was "not speaking as [a] citizen[] for First Amendment purposes," 547 U.S. at 421, and thus, that his speech was not protected.

**CONCLUSION**

For the reasons stated above, the order of the district court is AFFIRMED.

19

CALABRESI, <u>Circuit Judge</u>, dissenting:

*Garcetti v. Ceballos*, 547 U.S. 410 (2006), lends itself to multiple interpretations, and the majority's decision to construe it broadly (and, concomitantly, to construe public employees' First Amendment protections narrowly), while a possible reading, is not compelled by anything in the Supreme Court's opinion. Because I think a less expansive definition of speech made "pursuant to . . . official duties," *id.* at 421, is both a more appropriate reading of *Garcetti* and a more constructive resolution of the "delicate balancing" required by the First Amendment in the public employment context, *id.* at 423, I respectfully dissent.

As I read the majority opinion, it holds that a public employee's speech is "pursuant to official duties" and accordingly unprotected when it both (a) is "in furtherance of" the employee's "core duties," and (b) "ha[s] no relevant analogue to citizen speech." Maj. Op. at **3**. To be sure, *Garcetti* contains some language that can be read along these lines. But *Garcetti* leaves open the definition of "pursuant to official duties," and I do not think that the majority's two requirements, either separately or in combination, provide the right doctrinal framework for analyzing that question.[1]

The majority's first prong, which looks to whether speech is "in furtherance of" an employee's "core duties," seems to me too broad. The majority's discussion could be read to imply that—assuming the second prong of the majority's test is also satisfied—classroom

---

[1] I do not share the majority's belief that the Supreme Court "'narrowed [its] jurisprudence in the area of employee speech'" in *Garcetti*. Maj. Op. at **10** (quoting *Reilly v. City of Atl. City*, 532 F.3d 216, 228 (3d Cir. 2008)). *Garcetti* did not overturn or even call into question any of the Court's prior precedents on employee speech; indeed, it specifically reaffirmed or cited approvingly many of the precedents that the majority opinion suggests were "narrowed." *See, e.g.*, *Garcetti*, 547 U.S. at 417, 419, 420.

1

teachers receive no First Amendment protection anytime they speak on matters that implicate anything that is "an indispensable prerequisite to effective teaching and classroom learning." Maj. Op. at **15**. But the prerequisites for effective learning are broad and contentious; everything from a healthy diet to a two-parent family has been suggested to be necessary for effective classroom learning, and hence speech on a wide variety of topics might all too readily be viewed as "in furtherance of" the core duty of encouraging effective teaching and learning. The line-drawing this entails is necessarily subjective and provides little certainty to the employers and employees who must structure their behavior around our law. Is speech regarding, say, a teacher's concerns about a student's misconduct outside the classroom "in furtherance of" the teacher's core duty of maintaining class discipline? What of a teacher who discovers that a student is the victim of domestic abuse, which is affecting the student's classroom performance, and brings his concerns to the administration's attention? The majority's elaboration of *Garcetti* provides no administrable standards for analyzing such cases, and as such poorly serves not only the courts and juries that will hear future cases but also the parties who look to us for legal guidance.

The majority's second prong, which asks whether there is a "relevant citizen analogue" to Weintraub's speech, Maj. Op. at **16**, is also a plausible interpretation of *Garcetti*, but I am not convinced that it is the right one. I do not read *Garcetti*'s discussion of "analogue[s] to speech by citizens who are government employees," *Garcetti*, 547 U.S. at 424, to set out a doctrinal requirement. Rather, the Supreme Court was expounding upon "the theoretical underpinnings of [its] decisions." *Id.* at 423. That is, it was explaining *why* speech that is "pursuant to employment responsibilities," *id.* at 424, is unprotected, not defining that category of speech.

2

The idea that the existence of citizen analogues is a prerequisite for suit seems contradicted by *Garcetti*'s statement that the fact that a public employee "expressed his views inside his office, rather than publicly, is not dispositive." *Id.* at 420; *accord Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979) ("[The Supreme] Court's decisions . . . do not support the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly."). A "citizen analogue" inquiry will often replicate the private/public distinction that the Supreme Court has disavowed. The majority's analysis illustrates this problem, noting that "[r]ather than taking his grievance elsewhere, through channels available to citizens at large, Weintraub's speech took the form of an internal communication made pursuant to an existing dispute-resolution policy established by his employer." Maj. Op. at **18**.[2] The Supreme Court has made clear that not all internal speech is unprotected, *see Garcetti*, 547 U.S. at 420, and accordingly *some* speech that is not "through channels available to citizens at large" must be free from retaliation.

Even when read together, the majority's two prongs permit readings that would allow retaliation against much speech that seems to me to require protection and to remain protected after *Garcetti*. This sits uneasily with the Supreme Court's repeated assertion that "the members of a community most likely to have informed and definite opinions" about an issue must "be able to speak out freely on such questions without fear of retaliatory dismissal." *Pickering v. Bd. of*

---

[2] Additionally, the description of Weintraub's union complaint as an "internal communication" seems dubious. The Union Federation of Teachers is an external body, even if the union representative through whom Weintraub directed his complaint was presumably an employee of the Appellees.

*Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 572 (1968); *accord Garcetti*, 547 U.S. at 421. Consider *Givhan*, for example. In *Givhan*, a junior-high teacher had privately requested that the school principal make a number of administrative changes, all of which "reflect[ed] Givhan's concern as to the impressions on black students of the respective roles of whites and blacks in the school environment." *Ayers v. W. Line Consol. Sch. Dist.*, 555 F.2d 1309, 1313 (5th Cir. 1977). Writing for a unanimous Supreme Court, then-Justice Rehnquist wrote that Givhan's speech was protected even though it consisted of a private, internal communication and even though the principal was a willing recipient of her speech. *See Givhan*, 439 U.S. at 415-16. Would *Givhan* come out the same way under the majority's framework? Givhan's speech concerned her students' opinions on the school's handling of racial issues, a matter that has serious pedagogical implications. Accordingly, it could be described as a "means to fulfill . . . [her] primary employment responsibility of teaching," and, thereby, as an effort to further her core duty of "effective teaching." Maj. Op. at **14-15** (internal quotation marks and citations omitted); *cf. id.* at **13** (citing *Renken v. Gregory*, 541 F.3d 769, 773 (7th Cir. 2008), for the proposition that any actions taken "for the benefit of students" and that "aid[] in the fulfillment of . . . teaching responsibilities" are within a teachers' duties). And it certainly was a private communication to a willing audience that a regular citizen likely could not access in the same way. As a result, I fear that some courts will conclude that speech like Givhan's would fail both prongs of the majority's test. But *Garcetti* specifically reaffirmed *Givhan*. *See Garcetti*, 547 U.S. at 420-21.[3]

_____

[3] I recognize and greatly appreciate the majority's analysis of why its two-prong test is consistent with *Givhan*, and why *Givhan* is distinguishable from the case before us. But if *Givhan* survives it is because the two-pronged test the majority employs is not in fact the end of the matter. For that reason, I discuss *Givhan* primarily to illustrate why I believe that the test outlined today does not suffice to differentiate protected and unprotected speech.

4

Furthermore, the pragmatic concerns motivating *Garcetti* do not support such an expansive reading. *Garcetti* recognized the need for employers to have the freedom to "ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." *Id.* at 422-23. When an employee is engaged in speech that the "employer itself has commissioned or created," *id.* at 422, then the employee is acting as an agent or a mouthpiece of the employer, and the employer must have a substantial degree of control over the employee's execution of his responsibilities. If an employer could not discipline or fire an employee for the substance of his work product, the employer would be all but unable to function.

By contrast, when an employee's speech is not part of the implementation of the employer's business operations, the employer does not depend on "substantive consistency and clarity," *id.* at 422, in that speech. Instead, employers may well benefit from a narrowly defined exception to First Amendment protection, for an exemption that sweeps more broadly than necessary will likely encourage employees to make complaints publicly when they might otherwise be handled internally. *See id.* at 424 ("Giving employees an internal forum for their speech will discourage them from concluding that the safest avenue of expression is to state their views in public.").[4]

I would hold the scope of *Garcetti* to be coextensive with its prime concerns and to go no further. An employee's speech is "pursuant to official duties" when the employee is required to

---

[4] On this point, both the majority and at least one of the dissenters in *Garcetti* were in agreement. *See Garcetti*, 547 U.S. at 427 (Stevens, J., dissenting) ("[I]t seems perverse to fashion a new rule that provides employees with an incentive to voice their concerns publicly before talking frankly to their superiors.").

5

make such speech in the course of fulfilling his job duties. This necessitates a "practical" inquiry into each plaintiff's job duties. *See id.* at 424; *see also Marable v. Nitchman*, 511 F.3d 924, 932-33 (9th Cir. 2007). I do not mean to suggest that speech must be explicitly envisioned in a job description or specifically requested by the employer; on this point I agree with the majority. *See* Maj. Op. at **17**. ("[S]peech can be 'pursuant to' a public employee's official job duties even though it is not required by the employee's job description or included in it or in response to a request by the employer."). But it must be possible to say that the employer has "commissioned or created" the speech, *Garcetti*, 547 U.S. at 422—that the employer in some way *relies* on the speech made by the employee, as where the speech is an "official communications" or is used by the employer to "promote the employer's mission," *id.* at 423.

In *Garcetti*, for example, the plaintiff Richard Ceballos's responsibilities as a calendar deputy called for him "to advise his supervisor about how best to proceed with . . . pending case[s]." *Id.* at 421. The speech at issue involved a memo recommending that a case assigned to Ceballos be dismissed, which Ceballos was not authorized to do without his supervisor's approval. Brief of Petitioner at 4, *Garcetti*, 547 U.S. 410 (2006) (No. 04-473). The memo that Ceballos wrote was not merely related to his job duties, but rather it was the very thing he was paid by the Los Angeles County District Attorney's Office to do. Without Ceballos's competent advice and input, his employer could not function anywhere near as well. His employer therefore had a need to supervise the quality and content of that speech, and was entitled to discipline him accordingly.

As far as the record reflects, Appellees here did not in any way depend on Weintraub bringing union grievances or refraining from bringing them (subject, of course, to the

6

requirement that speech not "disrupt[] the workplace," *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006)). He may well have been in a position to file a grievance only because of his official duties, and the subject matter of that grievance may have had the potential to further those duties, but neither of these facts establishes that he filed his grievance *pursuant* to his official duties.

In the present posture of the case, I take it as a given that Weintraub's duties entailed informing the school administration of violent incidents, such as those at the root of this case, as a means of facilitating the school's disciplinary apparatus. This justifies the District Court's holding that Weintraub's comments to his supervisor were not protected.[5] But grieving the administration's response through his union is quite another matter. And neither the Appellees nor the majority direct us to any evidence that such a response was in any way required of Weintraub. It is possible that the union grievance was an official part of a process by which employees brought subjects of concern to Appellees' attention, facilitating corrective action; if this were the case, then Weintraub's grievance might be pursuant to his official duties and exempt from First Amendment protection.[6] But on the record before us, there is no reason to think this is so.[7]

_____

[5] Because Weintraub does not appeal this part of the District Court's holding, we need not consider it in any detail.

[6] As a general matter, I doubt that most employers would view union activity as something that their employees do *for the employer's benefit*. There is a distinct irony in the idea that unions, which so many employers seek to exclude from the workplace, are somehow transmuted into entities that "promote the employer's mission," *Garcetti*, 547 U.S. at 423, for purposes of the First Amendment.

[7] If nothing else, this presents a question that should be explored on remand or put before a jury. It should not be disposed of on summary judgment without further inquiry. This is

7

For these reasons, I respectfully dissent.

---

exactly what the Ninth Circuit did in *Freitag v. Ayers*, 468, F.3d 528 (9th Cir. 2006), upon which the majority relies. *Freitag* found that a first level of internal forms filed by a corrections officer about inmate misconduct was unprotected, as the officer was "required as a part of her official duties to report inmate misconduct and to pursue appropriate discipline," but it also remanded the case to the district court "for a determination of whether prison guards are expected to air their complaints regarding prison conditions all the way up to the CDCR director." *Marable*, 511 F.3d at 932; *see also Freitag*, 468 F.3d at 546. I agree with the majority that *Freitag* provides a good model for the case before us—but I do not believe that it supports the majority's conclusion.