21-598-cv
*Brooke, et al. v. Cnty. of Rockland, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of October, two thousand twenty-two.

PRESENT:
> DENNIS JACOBS,
> JOSEPH F. BIANCO,
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

FRANCIS BROOKE, FMB ENTERPRISES LLC,

> *Plaintiffs-Appellants*,

v.                                                      21-598-cv

COUNTY OF ROCKLAND, STEVEN HEUBECK, Director of Rockland County Police Academy, in his individual and official capacity, POLICE CHIEF'S ASSOCIATION OF ROCKLAND COUNTY, SHERIFF LOUIS FALCO, County of Rockland Sheriff's Department, in his individual and official capacity, UNDERSHERIFF ROBERT VAN CURA, County of Rockland Sheriff's Department, in his individual and official capacity, PAUL MODICA, Spring Valley Police Chief, in his individual and official capacity, MICHAEL O'SHEA,

Piermont Police Chief, in his individual and official capacity, KEVIN NULTY, Orangetown Police Chief, in his individual and official capacity, COUNTY OF ROCKLAND SHERIFF'S DEPARTMENT,

*Defendants-Appellees*.

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | BRYAN D. GLASS, Glass Harlow & Hogrogian LLP, New York, NY. |
| FOR DEFENDANT-APPELLEE COUNTY OF ROCKLAND: | DARIUS P. CHAFIZADEH (Mathew T. Dudley, *on the brief*), White Plains, NY. |
| FOR DEFENDANTS-APPELLEES HEUBECK, FALCO, VAN CURA, and COUNTY OF ROCKLAND SHERIFF'S DEPARTMENT: | ROBERT B. WEISSMAN, Saretsky Katz & Dranoff, L.L.P., Elmsford, NY. |
| FOR DEFENDANT-APPELLEE NULTY: | JACLYN G. GOLDBERG (Lance H. Klein, *on the brief*), Keane & Beane, PC, White Plains, NY. |
| FOR DEFENDANT-APPELLEE O'SHEA: | LEWIS R. SILVERMAN, Silverman & Associates, White Plains, NY. |
| FOR DEFENDANT-APPELLEE MODICA: | DENNIS E.A. LYNCH, Blanchard & Wilson, LLP, White Plains, NY. |
| FOR DEFENDANT-APPELLEE POLICE CHIEF'S ASSOCIATION OF ROCKLAND COUNTY: | JACK BABCHIK (Siobhan A. Healy, *on the brief*), Kaufman Dolowich Voluck, White Plains, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Halpern, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants Francis Brooke and his company FMB Enterprises LLC ("FMB") (collectively, "plaintiffs") appeal from a judgment which, *inter alia*, dismissed their First Amendment retaliation claim under 42 U.S.C. § 1983 against the County of Rockland (the "County"), the Police Chief's Association of Rockland County (the "PCA"), the County of Rockland Sheriff's Department ("Sheriff's Department"), and several individual defendants-appellees (collectively, "defendants").

Brooke, a former police officer with the Spring Valley Police Department from 1988 to 2016, taught various courses over the years at the Rockland County Police Academy (the "Academy"). The Academy was established by members of the PCA, the Sheriff's Department, and the County. Brooke was awarded a contract, through his company FMB, to be the Basic School Coordinator with the Academy from January 1, 2016 through December 31, 2016, though he was removed from his position on July 28, 2016 and FMB's contract was not renewed by the County for 2017. Plaintiffs allege that they were terminated from their positions at the Academy in retaliation for Brooke's complaints about defendant-appellee Steven Heubeck, the Director of the Academy. Specifically, Brooke complained to the New York State Department of Criminal Justice Services ("DCJS") and the County Attorney that Heubeck violated DCJS requirements by using uncertified instructors, submitting inaccurate course curricula to the DCJS, and omitting state-mandated content from courses.

On July 20, 2018, the district court granted, in part, motions to dismiss as to various defendants and claims, but denied the motions as to the First Amendment retaliation claims against the County, the PCA, Heubeck, and defendant-appellee Undersheriff Robert Van Cura, who was a member of the PCA and allegedly involved in removing Brooke from his position in the Academy and terminating FMB's contract with the County. The district court also denied the

motion to dismiss plaintiffs' state law claim for defamation against Heubeck. On March 3, 2021, the district court granted the remaining defendants' motion for summary judgment on the First Amendment retaliation claim, concluding that Brooke's complaints were made pursuant to his official duties, rather than as a private citizen, and therefore were not protected by the First Amendment. The district court declined to exercise supplemental jurisdiction over the remaining state law claim for defamation against Heubeck and dismissed that claim without prejudice.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm. As set forth below, we agree with the district court that Brooke did not engage in speech as a private citizen and, thus, the First Amendment retaliation claim fails as a matter of law.[1]

## DISCUSSION

We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the party opposing summary judgment and drawing all reasonable inferences in its favor. *See Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To prevail on a First Amendment retaliation claim, a government employee or contractor must establish that: (1) his speech was protected by the First Amendment; (2) he suffered an adverse employment action by the defendant; and (3) there was a causal connection between the

---

[1] Plaintiffs do not challenge the dismissal of various claims and defendants at the motion to dismiss stage, and thus have abandoned any such claims. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 294 (2d Cir. 2008). In any event, our analysis below would apply equally to the First Amendment retaliation claim as asserted against all defendants.

adverse action and his speech.[2]  *See Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 94 (2d Cir. 2020).  To establish that the speech was protected, a plaintiff must demonstrate that the subject of his speech was a matter of public concern and that he spoke as a citizen, rather than solely as an employee.  *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 80 (2d Cir. 2022).

In analyzing whether a public employee speaks as a citizen for purposes of a First Amendment retaliation claim, we ask whether (1) "the speech falls outside of the employee's official responsibilities," and (2) "a civilian analogue exists."  *Specht v. City of New York*, 15 F.4th 594, 603 (2d Cir. 2021) (internal quotation marks and alterations omitted) (quoting *Matthews v. City of New York*, 779 F.3d 167, 173 (2d Cir. 2015)).  As we have explained, the Supreme Court developed "a functional approach toward evaluating an employee's job duties."  *Matthews*, 779 F.3d at 173; *see also Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012) (explaining that we examine "the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two").  Thus, "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer."  *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010).  For example, in *Weintraub*, we held that a public school teacher, who filed a union grievance alleging that school administrators failed to discipline a student, spoke as an employee.  *Id.*  We concluded that the teacher's grievance was not citizen speech but was instead made pursuant to his employment because it was "part-and-parcel of his concerns about his ability to properly execute

---

[2]  Although Brooke and FMB were independent contractors for the Academy, their First Amendment retaliation claim is governed by the same standard that applies to claims brought by government employees. *See Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 684–85 (1996) (holding that the legal framework governing First Amendment retaliation claims of government employees also applies to claims brought by independent government contractors).

his duties" as a public school teacher—namely, the duty to "maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning." *Id.* at 203 (internal quotation marks omitted).

To be sure, the Supreme Court also has emphasized that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Lane v. Franks*, 573 U.S. 228, 240 (2014). Instead, "the critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*.

Here, the uncontroverted evidence in the record demonstrates that Brooke engaged in speech as an employee, rather than as a citizen.[3] As the Basic School Coordinator, Brooke, through his company FMB, was required to administer and conduct the Basic School under Heubeck's supervision. In that role, Brooke was responsible for scheduling classes, assigning instructors, and ensuring compliance with the DCJS course curricula and instructor requirements.[4] Moreover, as part of these duties, Brooke regularly interacted with the DCJS to seek approval for course schedules, instructors, and curricula. Therefore, Brooke's various complaints about his supervisor's alleged violations of the DCJS requirements were "part-and-parcel" of Brooke's

---

[3] Plaintiffs argue that, in denying the motion to dismiss the First Amendment retaliation claim against certain defendants, the district court concluded that Brooke's speech was protected because he made it as a citizen and, thus, the "decision on this legal question was the law of the case." Appellant's Br. at 10. However, "the [law of the case] doctrine would not preclude a district court from granting summary judgment based on evidence after denying a motion to dismiss based only on the plaintiff's allegations." *Maraschiello v. Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013).

[4] DCJS, a division of the New York Executive Department, is charged with the approval of, *inter alia*, police training schools, minimum courses of study, attendance requirements, and minimum qualifications for instructors at approved police training schools. *See* N.Y. Exec. Law, art. 35, §§ 836, 840, 841, 842, and 9 N.Y.C.R.R. 6020, *et seq.*

concerns about his ability to properly execute his duty to ensure that those requirements were met. *See Weintraub*, 593 F.3d at 203.

Plaintiffs argue that, because Brooke's complaints concerned Heubeck's violations in connection with courses that were outside of the Basic School program, Brooke did not speak pursuant to his official duties as the Basic School Coordinator. However, as part of his duties, Brooke sought the DCJS approval of at least one other course outside of the Basic School program. Additionally, as the Basic School Coordinator, Brooke was required to instruct in "all academy programs as assigned by [Heubeck]," not only in the Basic School courses. *See* App'x at 3089. For example, Brooke previously taught the Defense Tactic Instructor course, which was one of the subjects of his complaints, and learned about the inaccuracies in Heubeck's DCJS submissions for the course after Heubeck asked him to serve as an instructor and put Brooke's name on the curriculum. Therefore, when Brooke reported that the Defensive Tactics Instructor course did not meet the DCJS requirements, he was again raising concerns about his ability to execute his official duties as an instructor and comply with the state-mandated course requirements as the Basic School Coordinator.[5] *See Weintraub*, 593 F.3d at 203.

Indeed, in a May 16, 2016 email to the President of the PCA seeking mediation regarding his disputes with Heubeck, Brooke made clear that his various concerns (listed in detail in the email) were raised over time because, in his view, it was part of his responsibilities to ensure that the Academy was operated in a professional manner and that he could properly perform his job:

> I am respectfully requesting a mediation to stop a further deterioration of the professional relationship between Director Heubeck and myself. While I have tried to resolve numerous issues over the past six months, I have been unsuccessful. In

---

[5] We reach the same conclusion regarding the alleged misconduct by Heubeck reported by Brooke in connection with two other courses outside of the Basic School Program—the Instructor Development Course and the Security Guard Program training. Brooke served as an instructor for the Security Guard Program and was familiar with the content and requirements of the Instructor Development course because he had taken that course in the past.

fact, the situation has intensified. Out of respect for the Rockland County Police Academy, Director Heubeck, and the county Police Chiefs, I believe that these issues require immediate attention. Our collective goal is to have a professionally run police academy and these concerns make it difficult.

* * *

I believe as though I have conducted myself in a professional manner on a daily basis since arriving at the Academy in January. I am hopeful that an understanding can be reached that will permit Heubeck and myself to be able to successfully and respectfully work together for the betterment of the Academy and its staff.

App'x at 4015, 4017; *see also* App'x at 3093 (Brooke explaining, in a July 13, 2016 letter to the Sheriff, that Heubeck's actions were "interfering with [his] attempts to perform obligations under [his] contract with the County").

Finally, Brooke contends that his speech occurred as a private citizen because it had a civilian analogue—namely, a private citizen could make complaints to the DCJS or the County Attorney. "Speech has a relevant civilian analogue if it is made through channels available to citizens generally." *Matthews*, 779 F.3d at 175 (internal quotation marks omitted). An indicium that a plaintiff's speech has a civilian analogue is that the "speech was to an independent state agency responsible for entertaining complaints by any citizen . . . regardless of his status as a public employee." *See Jackler v. Byrne*, 658 F.3d 225, 241 (2d Cir. 2011) (internal quotation marks omitted).

Although the inquiry regarding the existence of a civilian analogue "may be of some help in determining whether an employee speaks as a citizen, we have emphasized that the heart of our analysis is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Shara*, 46 F.4th at 83 (internal quotation marks omitted); *see Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) ("[T]he existence of a civilian analogue is not dispositive of whether a public employee spoke as a private citizen . . . ."). Here, we conclude that the civilian analogue

8

inquiry does not undermine the conclusion that Brooke's speech was made in the course of his duties as an employee. Although a private citizen generally could lodge a complaint with the DCJS or County Attorney, those channels were not used by the public to lodge complaints about the content of the Academy's course curricula or whether instructors met the DCJS standards for police officer training. Indeed, Brooke reached out to his regular contact at the DCJS to communicate his complaints about Heubeck—a channel unavailable to a private citizen to make such complaints. **[A1121-23; A1307-08]** *See, e.g.*, *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 116 (2d Cir. 2011) (holding that an MTA security director's communications with the District Attorney's Office were not protected by the First Amendment because "he regularly interacted with District Attorneys' Offices and viewed cooperating with these offices as among his duties"). Similarly, Brooke did not contact the County Attorney on his own, as a private citizen might do to lodge a complaint. Instead, Brooke was referred to the County Attorney by the County Executive, who directed the County Attorney to prepare a confidential memorandum of findings. Therefore, the manner in which both the DCJS and County Attorney became involved in these particular matters further confirms that the speech at issue was made pursuant to Brooke's official duties as part of his work (and that of his company) at the Academy, rather than as a private citizen. *Cf. Matthews*, 779 F.3d at 176 (finding the existence of a civilian analogue where police officer "did not follow internal grievance procedures, but rather went directly to the Precinct commanders, with whom he did not have regular interactions and who had an open door to community comments and complaints"). We therefore need not consider whether the speech involves a matter of public concern.

9

Accordingly, the district court properly granted summary judgment for defendants on the First Amendment retaliation claim. Plaintiffs did not challenge the district court's decision to decline to exercise supplemental jurisdiction over the remaining state law claims.

## CONCLUSION

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court