*Salvana v. DOCCS*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of February, two thousand twenty-six.

PRESENT:
> DENNIS JACOBS,
> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

MICHAEL F. SALVANA, M.D.,

> *Plaintiff-Appellant*,

v.                                                          No. 25-677

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, CARL KOENIGSMANN, M.D., JOHN MORLEY, M.D., Deputy

Commissioner and Chief Executive Officer for The New York Department of Corrections and Community Supervision (DOCCS), DAVID S. DINELLO, M.D., Regional Medical Director, PATRICIA HENDERSON, R.N, Deputy Superintendent for Health Services, BETTY M. PARKMOND, R.N., Nurse Director,

*Defendants-Appellees.*[*]

_____

**For Plaintiff-Appellant:**        CARLO A.C. DE OLIVEIRA, Cooper Erving & Savage LLP, Albany, NY.

**For Defendants-Appellees:**        JONATHAN D. HITSOUS, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General for the State of New York, Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Brenda K. Sannes, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 6, 2025 judgment of the district court is **AFFIRMED**.

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Michael F. Salvana, M.D., appeals from the district court's dismissal of his claims against the New York Department of Corrections and Community Supervision ("DOCCS") pursuant to 42 U.S.C. § 1983, and its grant of summary judgment in favor of DOCCS's employees. Dr. Salvana – who previously led the medical unit at a DOCCS facility – contends that Defendants violated his First Amendment rights by "threaten[ing], harass[ing], and punish[ing]" him for criticizing DOCCS's Medications with Abuse Potential ("MWAP") policy, which prohibited doctors from prescribing addictive or unsafe medications without approval from higher-level officials. Salvana Br. at 5. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

"We review *de novo* the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018) (internal quotation marks omitted). We likewise "review[] grants of summary judgment *de novo*," upholding the district court's decision if, "construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor," we conclude that "there is no genuine

3

issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011) (internal quotation marks omitted).

## I. Claims Against DOCCS

We address first Salvana's contention that the district court erred in concluding that the Eleventh Amendment barred his claims against DOCCS. Although he concedes that the Eleventh Amendment ordinarily "prohibits private citizens" from suing states in federal court, Salvana Br. at 33; *see also Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015), Salvana insists that he is covered by the well-known exception to that rule for plaintiffs pursuing "injunctive relief against state *officials* for an ongoing violation of the law or the Constitution," Salvana Br. at 33 (emphasis added) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

But Salvana's claims against DOCCS do not seek relief from state officials – they target DOCCS itself. And "[a]gencies of the state, such as DOC[C]S, are entitled to assert the state's Eleventh Amendment immunity." *Santiago v. N.Y.S. Dep't of Corr. Servs.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991).[1] The district court thus

---

[1] Both Salvana's opening brief and his reply ignore this fatal issue. Instead, Salvana cites caselaw that *undermines* his own position. *See, e.g.*, Reply Br. at 14–15 (citing *Santiago*, 945 F.2d at 32).

4

properly dismissed Salvana's claims against DOCCS, while allowing those against

DOCCS's employees to proceed at least as far as summary judgment.

## II.    Claims Against DOCCS's Employees

Salvana also argues that the district court wrongly granted summary

judgment on his claims against DOCCS's employees by concluding that the First

Amendment did not shield his criticism of the MWAP policy.  We disagree.

To allege a claim for First Amendment retaliation, a public employee must

first establish that his speech is protected by the First Amendment from employer

retaliation.  *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 200 (2d Cir. 2010).  And "speech

of a public employee is protected by the First Amendment" from such employer

retaliation only "when the employee speaks as a citizen on a matter of public

concern, rather than pursuant to his employment responsibilities."  *Specht v. City*

*of New York*, 15 F.4th 594, 600 (2d Cir. 2021) (citing *Garcetti v. Ceballos*, 547 U.S. 410,

420–21 (2006)).  "[T]o determine whether a public employee speaks as a citizen,"

we "ask two questions":  (i) "did the speech fall outside of the employee's official

responsibilities," and (ii) "does a civilian analogue exist?"  *Matthews v. City of New*

*York*, 779 F.3d 167, 173 (2d Cir. 2015) (internal quotation marks omitted).  "[T]he

critical question . . . is whether the speech at issue is itself ordinarily within the

5

scope of an employee's duties." *Montero,* 890 F.3d at 397–98 (quoting *Lane v. Franks,* 573 U.S. 228, 240 (2014)).

## A. Official Responsibilities

Salvana contends that his speech fell outside his official responsibilities because his "duties did not include criticism of DOCCS'[s] policy." Salvana Br. at 31. But that formalistic gloss skirts the "practical" approach that we take in this context. *Weintraub,* 593 F.3d at 202 (quoting *Garcetti,* 547 U.S. at 424). Under that standard, "speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description." *Id.* at 203. Rather, employees speak within their official responsibilities if their speech is "part-and-parcel of [their] concerns about [their] ability to properly execute [their] duties." *Id.* (internal quotation marks omitted).

*Weintraub* shows how this standard works. There, we rejected a teacher's claim that his school district unlawfully retaliated against him after he "fil[ed] a formal grievance . . . challeng[ing] the school['s] . . . decision not to discipline a student who had thrown books at [him]." *Id.* at 198. We explained that while the teacher was not "required," *id.* at 203, to file this grievance – which arguably implicated "a general concern for safety in the classroom and school" – his speech

6

still fell within his official responsibilities because it related to "maintaining class discipline" and thus "further[ed] . . . one of his core duties as a . . . teacher," *id.* at 198–99 (internal quotation marks omitted).

So too here:  Salvana's "core duty" was to ensure the "high quality of [the] care" provided to his patients.  Salvana Br. at 18.  And his criticism of the MWAP policy served that goal.  Salvana extensively discussed the policy's effect on the medical needs of specific individuals, focused narrowly on exempting *only* his own unit from its requirements, and explained that he "kn[e]w what [was] best for [his] patients."  Resp't App'x at 424.  His speech "challenging [the MWAP policy] was" thus "a means to fulfill . . . his primary employment responsibility" of providing medical care to patients at the prison where he worked.  *Weintraub*, 593 F.3d at 203 (internal quotation marks omitted).[2]

Salvana also argues that "the MWAP policy violated federal law," and that his comments arose solely from his "legal obligation as a citizen to obey the law."

---

[2] In arguing to the contrary, Salvana relies on *Matthews*, where we held that a police officer's criticisms of his department's arrest-quota policy fell outside his job responsibilities, which did not include "formulating policy."  779 F.3d at 174.  But we explained there that the officer's critiques "addressed a precinct-wide policy," did not touch on the "practical reality of his everyday work," and raised abstract "concerns about broad policy issues."  *Id.* at 174–75.  Here, by contrast, Salvana's speech dealt with his daily obligation to care for his patients.  Furthermore, Salvana *was* arguably involved in formulating policy – he ran his own unit within DOCCS and successfully brokered a compromise regarding how the MWAP policy would apply there.

Salvana Br. at 25.  But while "a public employee speaks as a citizen when he or she *refuses to commit a crime* because *all* citizens have a duty to follow the law," *Montero*, 890 F.3d at 396 (first emphasis added and internal quotation marks omitted), the record nowhere suggests that Salvana challenged the MWAP policy because he believed that the requirement of obtaining pre-approval before prescribing potentially unsafe or addictive drugs would compel him to "commit a crime."  To the contrary, as discussed above, he attacked the policy primarily on the ground that it was interfering with his ability to care for his patients as he saw fit in the unit that he supervised.  *Cf. Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 87 n.1 (2d Cir. 2022) (refusing to let plaintiff reframe "focus[]" of speech after the fact).

Based on the record below, we cannot say that the district court erred in concluding that Salvana's speech fell within his official responsibilities.

B.  Civilian Analogue

Salvana's speech also lacks "a civilian analogue." *Matthews*, 779 F.3d at 175.[3] Such an analogue exists "if [the speech] is made through channels available to

---

[3] "Although the lack of a citizen analogue is 'not dispositive' . . . it does bear on the perspective of the speaker – whether the public employee is speaking as a citizen." *Weintraub*, 593 F.3d at 204 (quoting *Garcetti*, 547 U.S. at 420).  The lack of a civilian analogue here thus confirms and reinforces our conclusion that Salvana's speech fell within his official responsibilities.

citizens generally." *Id.* (internal quotation marks omitted). For example, "speech with a citizen analogue" would include "a schoolteacher's 'letter to a local newspaper,'" or "discuss[ions of] politics with a co-worker." *Weintraub*, 593 F.3d at 203–04 (quoting *Garcetti*, 547 U.S. at 422–23). By contrast, "internal communication[s]" about workplace issues do not use "channels available to citizens generally." *Id.* at 204. Salvana argues that his speech had a relevant civilian analogue because his "complaints about the MWAP [policy] used the same process that an inmate . . . would follow to challenge DOCCS'[s] mistreatment of incarcerated patients." Salvana Br. at 31. But even if Salvana had used the grievance procedure available to DOCCS inmates – who are hardly members of the general public – such an "internal communication pursuant to an existing dispute-resolution policy" would have "lack[ed] a relevant analogue to citizen speech." *Weintraub*, 593 F.3d at 204. Furthermore, Salvana did *not* use DOCCS's inmate-grievance procedure or any analogous form of communication – he directly contacted his supervisors and frequently invoked his official title. "Taking a complaint up the chain of command" in this way "does not . . . transform [it] into

protected speech made as a private citizen." *Ross v. Breslin*, 693 F.3d 300, 307 (2d Cir. 2012) (internal quotation marks omitted).[4]

\* \* \*

"The inquiry into whether a public employee is speaking pursuant to her official duties is not susceptible to a brightline rule," *id.* at 306, and the First Amendment might have protected a DOCCS physician's abstract public commentary on the overarching lawfulness or wisdom of the MWAP policy. But Salvana's internal communications focused primarily on his unit, his patients, and his ability to do his job. As such, Salvana spoke "in furtherance of the execution of one of h[is] core duties" – not as a private citizen. *Weintraub*, 593 at 203. The district court thus properly dismissed his First Amendment retaliation claim.

We have considered Salvana's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court.

---

[4] Salvana also contends that "[s]peech to a supervisor even in the workplace" may have a civilian analogue if the speech is "similar to colleagues discussing . . . politics in the office, which is the kind of activity engaged in by citizens who do not work for the government." Salvana Reply Br. at 9 (internal quotation marks omitted); *see Long v. Byrne*, 146 F.4th 282, 297–98 (2d Cir. 2025). But we need not engage in such hypotheticals because this case does not involve such speech: as discussed above, Salvana's emails and letters related directly to his core duties.