Ross v. Lichtenfeld

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT


August Term 2012

(Submitted: January 17, 2012      Decided: September 10, 2012)

Docket No. 10-5275-cv

--------------------------------------------------------x

RISA A. ROSS,

             Plaintiff-Appellee,

                    -- v. --

PETER F. BRESLIN, EVE HUNDT, MICHAEL GORDON, FELYCIA SUGARMAN, DONNA WALSH, BRUCE PAVALOW, WARREN SCHLOAT, BOARD OF EDUCATION OF THE KATONAH-LEWISBORO UNION FREE SCHOOL DISTRICT, KATONAH-LEWISBORO UNION FREE SCHOOL DISTRICT, KEVIN SHELDON,

             Defendants,

ROBERT LICHTENFELD,

             Defendant-Appellant.


--------------------------------------------------------x

B e f o r e :  WALKER, LEVAL, and POOLER, Circuit Judges.

    Defendant-appellant Robert Lichtenfeld appeals from an order of the United States District Court for the Southern District of New York (William G. Young, Judge) denying Lichtenfeld's motion for summary judgment with regard to plaintiff-appellee's claim

that she was fired in retaliation for her reports of financial malfeasance.  We conclude that plaintiff-appellee was speaking pursuant to her official duties as a public employee and her speech was therefore not protected by the First Amendment. Accordingly, we hold that defendant-appellant is entitled to summary judgment.  REVERSED.

JONATHAN LOVETT, Law Office of Jonathan Lovett, Hawthorne, New York, for Plaintiff-Appellee.

RONDIENE E. NOVITZ, Cruser, Mitchell & Novitz, LLP, Melville, New York, for Defendant-Appellant.

JOHN M. WALKER, JR., Circuit Judge:

This appeal requires us to determine whether plaintiff-appellee Risa A. Ross ("Ross") was speaking pursuant to her official duties as a payroll clerk typist for the Katonah-Lewisboro Union Free School District ("the District") when she reported financial malfeasance to defendant-appellant Robert Lichtenfeld ("Lichtenfeld"), the District's Superintendent, and to the Katonah-Lewisboro Board of Education ("the Board").  The United States District Court for the Southern District of New York (William G. Young, Judge) held that Ross was speaking as a private citizen and that her First Amendment retaliation claim could proceed to trial.  We disagree.  We conclude that Ross's complaints were made pursuant to her official duties and

2

therefore were not protected by the First Amendment.  See
Garcetti v. Ceballos, 547 U.S. 410 (2006).  Accordingly,
Lichtenfeld is entitled to summary judgment on Ross's First
Amendment retaliation claim.

**BACKGROUND**

When reviewing an interlocutory appeal from a denial of a
motion for summary judgment, we resolve all factual disputes in
favor of the non-movant.  Droz v. McCadden, 580 F.3d 106, 108 (2d
Cir. 2009).  In 1998, Ross was hired by the District as a payroll
clerk typist.  Her immediate supervisor was Margaret Taylor.
Lichtenfeld was, at all relevant times, the District's
Superintendent.  Ross testified that her job duties were:

> To process biweekly payrolls for approximately 800
> people, transmit direct deposit, [and] mail out [checks
> relating to other payments, such as taxes and
> garnishments,] . . . . getting the pay reqs.
> [requisitions] . . . and processing, making sure that
> the pay rates were correct, making sure that the totals
> were correct, and verifying.  If there was a mistake
> with a pay req., bringing it to the appropriate
> person's attention.
> . . . .
> If it was a mistake that I felt was a mistake, I would
> bring it to the person's attention. . . .  If there was
> a pay req. that I disagreed with and I had questions
> about . . . .
> . . .
> I brought – a lot of them I brought to Bob
> [Lichtenfeld]'s attention that I didn't think were
> appropriate.

3

Ross Deposition 64-65. Ross's job required her to know the current salary of each district employee.

Between May 2003 and July 2006, Ross met with Lichtenfeld on numerous occasions to express concern over payments she believed to be improper. At their first meeting in May 2003, Ross informed Lichtenfeld that Howard "Lee" Turner, a District courier, had forged his supervisor's signature to obtain additional pay. Ross played voicemails for Lichtenfeld in which a supervisor told her to forget about Turner's actions and not say anything. Lichtenfeld informed the Board of Turner's forgery. Turner voluntarily resigned to avoid disciplinary action and received compensation for his accrued vacation time and two months of continued health insurance.

On February 10, 2004, Ross again met with Lichtenfeld to tell him that John Thibdeau, the director of administrative services, was retaliating against her for questioning improper payments he had approved and for an incident involving Lisa Kor. At this meeting, Ross gave Lichtenfeld documentation of some of these disbursements. When Lichtenfeld looked at the documentation, he said something to the effect of: "Oh, my God. This is worse than the Enron scandal. If taxpayers find out heads will spin." Ross Deposition 119. Following this meeting, Ross continued to meet with Lichtenfeld about similar complaints.

Ross's complaints primarily concerned improper disbursements which she believed were made without the required Board approval based on her review of Board meeting agendas. She had been told by Lichtenfeld that "Board action people" (individuals not under contract who must be annually approved by the Board) were not entitled to overtime. She approached Lichtenfeld with examples of Board action people who were receiving overtime pay without Board approval. Similarly, Lichtenfeld told Ross that it was illegal to give out bonuses or performance awards without Board approval. Ross complained of numerous performance awards, bonuses, stipends, at least one longevity payment, and other miscellaneous disbursements all of which she believed were made without the necessary Board approval. In a separate incident, Ross complained that Lichtenfeld had spent $500 of District funds to buy chocolates for a gift.

In October 2005, the District hired Renee Gargano ("Gargano") as an outside consultant to help resolve interpersonal problems among the staff. Gargano was at all relevant times Deputy Superintendent of the Putnam/Northern Westchester BOCES ("Putnam"), a nearby school district. Upon viewing a list of employees, Gargano recognized Ross's name and informed Lichtenfeld that Ross had previously been employed by Putnam. Gargano did not recall having received a reference check call when Ross was hired by the District. Further investigation

5

revealed that Ross had failed to list her employment with – and termination from – Putnam, as well as two other school districts, on her employment application.

In January 2006, Ross met with Gargano. Ross told Gargano about the improper payments she had reported to Lichtenfeld and showed her the relevant documentation. Gargano took the documents and said she would discuss the matter with Lichtenfeld.

On May 23, 2006, Ross was suspended with pay by Kevin Sheldon, the District's Assistant Business Administrator. On July 21, 2006, Ross wrote a letter on her personal stationary to the individual Board members outlining the concerns she had raised to Lichtenfeld. The letter began: "Although I am an employee of the School District, I am writing to you, . . . President of the Board of Education, on a personal note out of complete frustration with the District's administration." After explaining her conversations with Lichtenfeld and noting her frustration with his failure to take what she considered to be appropriate action, she stated that her suspension was in retaliation for reporting financial malfeasance.

After the Board received this letter, it convened an executive session at which Lichtenfeld recommended Ross's termination. The Board voted to terminate her. It subsequently learned, however, that Ross had been entitled to a pre-termination hearing. It rescinded her termination and initiated

6

a disciplinary hearing, which was held on August 24 and 31, 2006, before Hearing Officer Joseph E. Wooley. The Hearing Officer found that Ross had knowingly made false statements on her application and recommended that she be terminated. On December 19, 2006, the Board voted unanimously to terminate Ross.

Ross filed this amended complaint in March 2007 claiming in relevant part that her termination was a violation of her First Amendment rights. Lichtenfeld moved for summary judgment. On December 6, 2010, the district court granted the motion as to some of Ross's claims, but denied it with regard to her First Amendment retaliation claim. Ross v. Lichtenfeld, 755 F. Supp. 2d 467 (S.D.N.Y. 2010). The district court concluded that Lichtenfeld was not entitled to qualified immunity on that claim. Id. at 479. Lichtenfeld appeals.

**DISCUSSION**

An interlocutory appeal from a denial of summary judgment is permissible when a district court denies the defendant qualified immunity. See Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 760 (2d Cir. 2003). Such an appeal is allowed only if the defendant contends that he is entitled to qualified immunity under the plaintiff's version of the facts. Id. at 761. Ross argues that we lack jurisdiction because this appeal is based on

7

disputed facts, i.e., Lichtenfeld's intent.  However, we agree with Lichtenfeld that even under Ross's version of the facts, her complaints are not entitled to First Amendment protection because they were made pursuant to her job duties.  Thus, Ross's jurisdictional argument is without merit.

We will grant summary judgment if, taking all the facts in the light most favorable to the non-moving party, the defendant was entitled to qualified immunity as a matter of law.  Id. at 760-61.  In general, qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity inquiry can turn on either of two questions:  whether the complaint alleges the deprivation of an actual constitutional right, or whether the right was clearly established at the time of the incident.  See Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009).  A "no" answer to either question requires judgment for the defendant.  See id. at 245; Costello v. City of Burlington, 632 F.3d 41, 51 (2d Cir. 2011) (Pooler, J., concurring).  The district court concluded that Ross had presented sufficient evidence that Lichtenfeld violated her clearly established First Amendment right to freedom of speech.  We disagree and hold that, because

8

Ross was speaking pursuant to her official duties and not as a private citizen, her speech was not protected by the First Amendment. Because we find that the complaint does not allege a violation of a constitutional right, it is clear a fortiori that the right was not clearly established at the time of the incident.

In the First Amendment context, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill., 391 U.S. 563, 568 (1968). Speech by a public employee is protected by the First Amendment only when the employee is speaking "as a citizen . . . on a matter of public concern." Piscottano v. Murphy, 511 F.3d 247, 269-70 (2d Cir. 2007). In Garcetti v. Ceballos, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. This is the case even when the subject of an employee's speech is a matter of public concern. Jackler v. Byrne, 658 F.3d 225, 237 (2d Cir. 2011); Anemone v. Metro. Transp. Auth., 629 F.3d 97, 115-16 (2d Cir. 2011). Therefore, if, as a matter of law, Ross

9

was speaking pursuant to her official duties, Lichtenfeld is entitled to summary judgment.

In Garcetti, the plaintiff, Richard Ceballos, who was a deputy district attorney, was asked by a defense attorney to review an affidavit that had been used to obtain a search warrant. Ceballos discovered significant misrepresentations in the affidavit. He informed his supervisors of his discovery and wrote a disposition memo recommending that the charges be dismissed. He claimed that he was subsequently subjected to retaliatory employment action. 547 U.S. at 413-15. The Supreme Court determined that he had not been speaking as a citizen when he told his supervisors about the problems with the affidavit: "The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. . . . Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case . . . ." Id. at 421. In short, "Ceballos wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do." Id.

The Court further observed that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." Id. at 421-22. Instead, "[i]t simply reflects the exercise of employer control

10

over what the employer itself has commissioned or created." Id. at 422.

In Weintraub v. Bd. of Educ., 593 F.3d 196 (2d Cir. 2010), we addressed the applicability of Garcetti to a teacher's complaints about his school administration's failure to discipline a disruptive student. After the administration failed to punish a student in Weintraub's class for throwing a book on two separate occasions, Weintraub told his supervisor and co-workers that he intended to file an employee grievance with his union, and thereafter filed the grievance. Weintraub, 593 F.3d at 198-99. Weintraub argued that his complaints were not made pursuant to his official duties because they were not required by his job description, school policy, or other relevant regulations. Id. at 201-02. We rejected this argument, holding that "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." Id. at 203. We emphasized that the inquiry into whether speech was made pursuant to an employee's "official duties is 'a practical one,'" id. at 202 (quoting Garcetti, 547 U.S. at 424), focused on whether the speech "was part-and-parcel of his concerns about his ability to properly execute his duties." Weintraub, 593 F.3d at 203 (internal quotation marks omitted). We further noted that

11

Weintraub's speech took the form of an employee grievance, an avenue unavailable to private citizens. Id. at 203-04 ("Although the lack of a citizen analogue is not dispositive in this case, it does bear on the perspective of the speaker - whether the public employee is speaking as a citizen . . . ." (internal citation and quotation marks omitted)).

The inquiry into whether a public employee is speaking pursuant to her official duties is not susceptible to a bright-line rule. Courts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two. See id. at 201-02. Other contextual factors, such as whether the complaint was also conveyed to the public, may properly influence a court's decision. See id. at 205.

In this case, Ross alleges three instances of protected speech: her reports to Lichtenfeld about improper payments and promotions, her statements to Gargano about the same issues, and her letter to the Board members. The district court concluded that the statements to Gargano were not protected because they were in the nature of an employee grievance, but that Ross's statements to Lichtenfeld and her letter to the Board were entitled to First Amendment protection because in those instances, in the district court's view, she was speaking on a matter of public concern, she went outside the chain of command, and her complaints were not in the nature of an employee

12

grievance. <u>Ross</u>, 755 F. Supp. 2d at 474-75. Lichtenfeld contends that, although Ross's speech was on a matter of public concern, it was made pursuant to her duties as a payroll clerk typist and is therefore not protected by the First Amendment. We agree.

Ross testified that her job duties included processing the payroll and making sure pay rates were correct. She stated that if there was a mistake with a pay requisition, her duty was to "bring[] it to the appropriate person's attention." Ross Deposition 64. She specifically noted that she brought many such requisitions to Lichtenfeld's attention. <u>Id.</u> at 65. Ross learned that overtime for Board action people and performance bonuses without Board approval – the cause of most of her individualized complaints – were improper because she was told so by Lichtenfeld and her supervisor. <u>Id.</u> at 89, 95-97. She further stated that she was not able to balance out the payroll without knowing whether certain payments had been approved by the Board. <u>Id.</u> at 100-01. Ross attempts to downplay the importance of her role in the District's payroll system, noting that descriptions of her job consistently refer to it as "clerical." Appellee's Br. at 19. However, "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." <u>Garcetti</u>, 547 U.S. at 424-25.

13

Ross's testimony makes plain that reporting pay irregularities to a supervisor was one of her job duties. She admitted that her responsibilities included reporting mistakes to supervisors. Moreover, she acquired all of the information she relayed to Lichtenfeld in the ordinary course of performing her work, and she was not able to meet her responsibility of balancing the payroll without resolving pay requisition irregularities on at least one occasion. Her reports to Lichtenfeld were part and parcel of her official responsibilities.

Ross urges that she was speaking as a private citizen because she went outside the chain of command by first bringing her concerns to Lichtenfeld instead of her supervisor and then by writing to the Board. However, Ross testified that her duties included bringing payroll irregularities "to the appropriate person's attention," and went on to say that she frequently brought such issues to Lichtenfeld, implying that reporting to Lichtenfeld as "the appropriate person" was within the purview of her job duties. Ross Deposition 64-65. Moreover, Ross brought her concerns to Lichtenfeld because she believed her supervisor was ignoring them; and she similarly wrote to the Board only when she believed that Lichtenfeld was not acting on her complaints. Taking a complaint up the chain of command to find someone who will take it seriously "does not, without more, transform [her]

speech into protected speech made as a private citizen." Anemone, 629 F.3d at 116.

Ross's assertion in her letter that she was writing "on a personal note" rather than as a District employee does not alter our conclusion. An employee's characterization of her own speech is not dispositive.

Because Ross never attempted to communicate her complaints to the public, she cannot avail herself of the argument that her duties in no way included public revelation of misconduct of district officials that is generally available to the employee who takes the issue public. Cf. Weintraub, 593 F.3d at 205 (where the plaintiff had no such argument as he never communicated with the public).

We emphasize that our holding that Ross's speech was unprotected does not rest on the fact that her speech was made in the workplace as opposed to elsewhere. Speech to a supervisor even in the workplace can be protected as that of a private citizen if it is not made pursuant to the employee's official duties as an employee. Courts must focus their inquiry on the nature of the speech itself and its relationship to the plaintiff's job responsibilities. We also observe that complaints about workplace misconduct, while they may be unprotected by the First Amendment if made as part of the plaintiff's job duties, still may be protected by whistleblower

15

laws or other similar employment codes.  See Garcetti, 547 U.S. at 425-26; Ruotolo v. City of N.Y., 514 F.3d 184, 189 n.1 (2d Cir. 2008).

Finally, we note that this circuit's recent holding in Jackler v. Byrne, 658 F.3d 225, does not bear on our case.  In Jackler, the plaintiff was a probationary police officer who allegedly witnessed the use of excessive force against a suspect by a fellow officer.  That suspect filed a civilian complaint against the officer.  At the request of his supervisor, and in accordance with written police procedure, Jackler filed a report corroborating the accusation of excessive force.  Id. at 230-31. Jackler's supervisors pressured him to retract the report and falsify his story to protect the offending officer.  When Jackler refused, he was not hired as a full-time officer.  Id. at 231-32. The panel concluded that Jackler had a cognizable First Amendment claim because, when he refused to file a false report, he was speaking as a citizen.

Jackler involved very different circumstances from this case.  The panel emphasized that Jackler had been asked to "retract his truthful statements and make statements that were false," and determined that "his refusals to accede to those demands constituted speech activity that was significantly different from the mere filing of his initial Report."  Id. at 241.  Indeed, if Jackler had made a false statement to the

police, he would have violated New York law.  Id. at 239.
Jackler is therefore plainly distinguishable on its facts.  Ross alleges that she suffered retaliation for making affirmative statements of misconduct to her supervisors, not for refusing to make false statements that no misconduct had occurred.

In this case, the speech that prompted Ross's retaliation claim owed its existence to her job duties and was made in furtherance of those duties.  As a payroll clerk, she was tasked with reporting pay irregularities to her supervisors, and that is what she did here.  Accordingly, her complaints to Lichtenfeld and the Board were not protected by the First Amendment, and Lichtenfeld is entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is REVERSED.