UNITED STATES DISTRICT COURT 
EASTERN DISTRICT OF NEW YORK 
----------------------------------------------------------------X 
DR. VARLETON McDONALD, 

 Plaintiff, 
-against- MEMORANDUM & ORDER 
 18-CV 5658 
HEMPSTEAD UNION FREE SCHOOL DISTRICT, 
BOARD OF EDUCATION OF THE HEMPSTEAD 
SCHOOL DISTRICT, DAVID B. GATES, 
Individually and in his official capacity, RANDY 
STITH, Individually and in his official capacity, 
and LAMONT E. JOHNSON, Individually 
and in his official capacity, 

 Defendants. 
----------------------------------------------------------------X 

APPEARANCES: 

For Plaintiff: 
Law Office of Mark E. Goidell 
666 Old Country Road 
Suite 700 
Garden City, NY 11530 
By: Mark E. Goidell, Esq. 

For Defendants: 
The Scher Law Firm, LLP 
One Old Country Road 
Suite 385 
Carle Place, NY 11514 
By: Austin R. Graff, Esq. 

HURLEY, Senior District Judge: 
 - 

Presently before the Court are objections by defendants Hempstead Union 
Free School District (the "District"), Board of Education of The Hempstead School 
District (the "Board"), David B. Gates ("Gates"), Randy Stith ("Stith") and Lamont 
E. Johnson ("Johnson") (Gates, Stith and Johnson collectively "Individual 
Defendants" and Individual Defendants, the District and the Board collectively 
"Defendants") to the Report and Recommendation, dated November 7, 2021 
(“R&R”), of Magistrate Judge Steven I. Locke insofar as it recommends denial of 

Defendants' motion for summary judgment on all claims of Plaintiff Varleton 
MacDonald ("Plaintiff" or "MacDonald") except the claims against the Defendants in 
their official capacity. For the reasons set forth below, the Court sustains the 
objections with respect to whether the communications at issue are protected by the 
First Amendment, declines to adopt the R&R with respect to that issue, and 
therefore grants Defendants' motion for summary judgment on the First 
Amendment retaliation claim. 

I. Nature of this Action 
This action arises out of the termination of Plaintiff's employment as the 
District's Deputy Superintendent of Schools. As alleged in the complaint, Plaintiff 
contends that the Individual Defendants voted to terminate him in retaliation for 
his communications with the FBI and New York State Department of Education 
("NYSDOE") concerning various improprieties in the District, as well as for 

forwarding an audit report from Plante Moran detailing such to the then Acting 
Superintendent of the District, Regina Armstrong ("Armstrong").1 Defendants deny 
that such was their motivation and assert that they cast their votes based on the 

1 The complaint also asserted a First Amendment retaliation claim based on 
Plaintiff's communications to the Board and District Administrators and a claim for 
First Amendment Freedom of Association retaliation. By Order dated June 28, 
2019, the Court dismissed those claims. 
recommendation of Armstrong and their own observations regarding the District's 
lack of a need for a District Deputy Superintendent. 
Relevant facts as set forth in Judge Locke's R&R are incorporated by 

reference. Additional relevant facts are referenced herein as appropriate. 
II. Judge Locke's Report and Recommendation 
Judge Locke began his analysis of Plaintiff's § 1983 First Amendment 
retaliation claim by discussing whether McDonald engaged in constitutionally 
protected speech, to wit, whether the speech was on matters of public concern and 
whether he spoke as a citizen, rather than an employee, for First Amendment 
purposes. 

As to whether the speech at issue was on a matter of public concern, Judge 
Locke noted that Defendants did not dispute that such was the nature of the speech 
at issue, deemed the point conceded, and went on to address whether McDonald 
spoke as a citizen. Judge Locke stated that as there was no disagreement as to 
Plaintiff's written job description and that there was no evidence that he was hired 
in whole or in part to investigate or report to authorities any corruption. He 

therefore concluded that there are material questions of facts as to whether the 
following actions fell outside his responsibilities: uncovering corruption and 
reporting it to the proper authorities, his meetings and conversations with the FBI 
and the NYSDOE, and his forwarding of the Plante Moran Report to Armstrong. 
Although not addressed by Defendants in their motion papers, Judge Locke 
also addressed the issue of whether civilian analogues, i.e., a "form or channel of 
discourse available to non-employee citizens" was used by McDonald in connection 
with the speech at issue and found that such civilian analogues did exist. 
Finally, Judge Locke concluded that material issues of fact existed as to the 

causal connection between Plaintiff's protected speech and the Individual 
Defendants' decision to terminate him. 
Having concluded his analysis of McDonald's First Amendment retaliation 
claim, Judge Locke next turned to the District's claim that it was entitled to 
summary judgment on the Monell claim against it. As the Individual Defendants 
acted in their capacity as members of the Board of Education in voting to terminate 
Plaintiff's employment and as the Board of Education is the final decision maker in 

the District, Judge Locke recommended that summary judgment on the Monell 
claim be denied. 
Next, Judge Locke addressed the argument that the Individual Defendants 
were entitled to summary judgment as to the claims brought against them in their 
official and individual capacities. He recommended dismissal of the official capacity 
claims as duplicative of the claims against the District. With respect to the 

Individual Defendants' assertion of qualified immunity for the claims against them 
in their individual capacities, he recommended that the Court reject the motion. 
Lastly, Judge Locke recommended denial of the motion as to the state 
whistleblower claims given the conflicting evidence regarding Defendants' 
knowledge of Plaintiff's prior engagement in constitutionally protected speech and 
their vote to terminate his employment in retaliation for that speech. 
III. Defendant's Objections 
Defendants object to the R&R asserting that the Magistrate Judge erred in 
recommending denial of their summary judgment motion in that he (1) erroneously 

concluded that Plaintiff engaged in constitutionally protected speech; (2) incorrectly 
determined there was sufficient evidence to support Monell liability; (3) incorrectly 
rejected Defendants' claim to qualified immunity and (4) erroneously determined 
there was conflicting evidence as to the Individual Defendants' knowledge of 
Plaintiff's protected activity warranting denial of the motion as to Plaintiff's New 
York statutory retaliation claim 
IV. Standard of Review 

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge 
issues a report and recommendation on a matter “dispositive of a claim or defense of 
a party,” the district court judge shall make a de novo determination of any portion 
of the magistrate judge’s disposition to which specific written objection has been 
made. Fed. R. Civ. P. 72(b). 
V. McDonald's First Amendment Retaliation Claim 

A. Relevant Law 
To prevail on a claim that he or she was retaliated against in violation of the 
First Amendment, a plaintiff must establish "‘(1) his [or her] speech or conduct was 
protected by the First Amendment; (2) the defendant took an adverse action against 
him [or her]; and (3) there was a causal connection between this adverse action and 
the protected speech.’” Montero v. City of Yonkers, 890 F.3d 386, 394 (2d Cir. 2018) 
(quoting Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011)). 
"The inquiry into the protected status of speech is one of law, not fact." Connick v. 
Myers, 461 U.S. 138, 148 n.7 (1983). 

“Although a public employee ‘does not relinquish First Amendment rights to 
comment on matters of public interest by virtue of government employment,’ these 
rights are not absolute, because the public employer has a legitimate interest in 
regulating the speech of its employees to promote the efficiency of its public 
services." Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003) (citing 
Connick v. Myers, 461 U.S. 138, 140 (1983)); see also Garcetti v. Ceballos, 547 U.S. 
410, 418 (2006) (“A government entity has broader discretion to restrict speech 

when it acts in its role as employer, but the restrictions it imposes must be directed 
at speech that has some potential to affect the entity’s operations.”); Pickering v. 
Bd. of Educ., 391 U.S. 563, 568 (1968)); Ruotolo v. City of New York, 514 F.3d 184, 
189 (2d Cir. 2008) (“Recognizing that government employers (like private 
employers) have heightened interests in controlling speech made by an employee in 
his or her professional capacity, the Supreme Court ruled that a public employee 

speaking in his official capacity is not speaking as a citizen for First Amendment 
purposes, and employer retaliation for such speech does not justify the 
‘displacement of managerial discretion by judicial supervision.’”) (internal quotation 
marks omitted). 
“When public employees make statements pursuant to their official duties, 
the employees are not speaking as citizens for First Amendment purposes, and the 
Constitution does not insulate their communications from employer discipline.” 
Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). However, there are times when a 
public employee’s speech falls within the ambit of the First Amendment. 

To determine whether a public employee’s speech is protected, courts conduct 
a two-step inquiry. Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015). 
First, the court “determin[es] whether the employee spoke as a citizen on a matter 
of public concern. Id. (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). “This 
step one inquiry in turn encompasses two separate subquestions: ‘(1) whether the 
subject of the employee's speech was a matter of public concern and (2) whether the 
employee spoke ‘as a citizen’ rather than solely as an employee.’” Id. (quoting 

Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir.2011)). An employee speaks as a citizen 
if the speech fell outside of the employee’s official responsibilities, and a civilian 
analogue existed. Id. (citing Weintraub v. Bd. of Educ., 593 F.3d 196, 203–04 (2d 
Cir. 2010)). Speech is on a matter of public concern and therefore a protected 
activity “if it relates ‘to any matter of political, social, or other concern to the 
community.’ ” Dillon v. Suffolk Cnty Dept. of Health Servs., 917 F.Supp.2d 196, 205 

(E.D.N.Y. 2013) (citing Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 
L.Ed.2d 708 (1983)). If the answer to either subpart is no, the inquiry ends. “If, 
however, both questions are answered in the affirmative, the court then proceeds to 
the second step of the two-step inquiry, commonly referred to as the Pickering 
analysis: whether the relevant government entity ‘had an adequate justification for 
treating the employee differently from any other member of the public based on the 
government's needs as an employer.’” Matthews, 779 F.3d 167 (quoting Lane v. 
Franks, 573 U.S. 228, 134 S. Ct. 2369, 2380 (2014)). 
The Second Circuit has identified two relevant inquiries to determine 

whether a public employee speaks as a citizen: "(1) whether the speech falls outside 
the employee's official responsibilities, and (2) whether a civilian analogue [(i.e., a 
form or channel of discourse available to non-employee citizens)] exists." Montero v. 
City of Yonkers, New York, 890 F.3d 386, 397 (2d Cir. 2018 (internal quotations 
omitted). The first inquiry is the critical one while the second issue "may be of some 
help in determining whether one spoke as a citizen." Id. 
To determine whether speech falls outside an employee's official duties, a 

court “must examine the nature of the plaintiff's job responsibilities, the nature of 
the speech, and the relationship between the two,” as well as “[o]ther contextual 
factors, such as whether the complaint was also conveyed to the public.” Ross v. 
Breslin, 693 F.3d 300, 306 (2d Cir. 2012). A public employee's speech is not 
protected if it is “part-and-parcel of [the employee's] concerns about his ability to 
properly execute his duties.” Weintraub v. Bd. of Educ. of City Sch. Dist. of City of 

New York, 593 F.3d 196, 203 (2d Cir. 2010). Directing the speech at issue up the 
“chain of command” is evidence that the employee is speaking pursuant to his 
official duties. Castro v. Cty. of Nassau, 739 F. Supp. 2d 153, 180 (E.D.N.Y. 2010) 
(holding that a security guard was speaking as a public employee when he “directed 
his complaints up the operational chain of command”); see also Carter v. Inc. Vill. of 
Ocean Beach, 415 F. App'x 290, 293 (2d Cir. Mar. 18, 2011) (finding that plaintiffs 
were speaking pursuant to their official duties where their “allegations establish no 
more than that they reported what they believed to be misconduct by a supervisor 
up the chain of command—misconduct they knew of only by virtue of their jobs as 

police officers and which they reported as ‘part-and-parcel of [their] concerns about 
[their] ability to properly execute [their] duties.’ ” (citing Weintraub, 593 F.3d at 
203)). 
“[U]nder the First Amendment, speech can be ‘pursuant to’ a public 
employee's official job duties even though it is not required by, or included in, the 
employee's job description or in response to a request by the employer.” Weintraub, 
593 F.3d at 203. “Weintraub and its progeny make clear that merely reporting 

information outside the chain of command is not necessarily sufficient, in and of 
itself, to establish that a public employee was speaking as a citizen.” Williams v. 
Cty. of Nassau, 779 F. Supp. 2d 276, 283-84 (E.D.N.Y. 2011), aff'd, 581 F. App'x 56 
(2d Cir. 2014); see also Malgieri v. Ehrenberg, 2012 WL 6647515, at *1 (S.D.N.Y. 
2012) (speech that is outside the chain of command is not necessarily dispositive of 
whether a person is speaking as a citizen). Hence, even where the speech is made 

outside the “chain of command,” a public employee speaks pursuant to his official 
duties if his speech was “part-and-parcel of his concerns about his ability to properly 
execute his duties.” Weintraub, 593 F.3d at 203. 
Where speech “owes its existence” to the employee's job duties, or is of the 
sort that is derived from special knowledge resulting from the speaker's 
employment, it is more likely that the speech was made as an employee than as a 
citizen. Taylor v. New York City Dep't of Educ., 2012 WL 3890599, at *3, *5, *7 
(S.D.N.Y. Sept. 6, 2012). Where a speaker, despite going “outside the chain of 
command,” engages in speech to an entity to which he regularly interacts as part of 

his job, courts have held that speech is made pursuant to the speaker's official 
duties. Anemone v. Metro. Transp. Auth., 629 F.3d 97, 115-17 (2d Cir. 2011). 
B. The Relevant Facts as Admitted by Plaintiff 
The facts as admitted by Plaintiff with respect to the three communications 
at issue are: 
The FBI Meeting 
In December 2017, Plaintiff and Dr. Waronker, the then Superintendent of 

the District ("Waronker"), attended a meeting with agents of the FBI at the FBI's 
offices in Mineola, New York. Plaintiff was invited to attend by Waronker, his 
immediate supervisor. "During the meeting, Plaintiff provided detailed information 
to the FBI including, but not limited, to school safety and security issues arising 
from unsupervised and unauthorized students in the hallways, gang presence and 
the absence of effective policies, chronic student absences without corrective 

policies, weapons in the school, including weapons confiscated from students and 
stored without appropriate inventory procedures or surrender to law enforcement, 
attendance at the school by students who were no longer eligible as students, 
former employees being paid although no longer working, patronage hiring of 
ineffective and poor-performing security personnel, . . . falsely reported student 
registrations and fraudulently procured funding.". (Pl,'s Counter 56.1 Statement at 
¶¶ 15-17.) 
The Videoconference with the NYDOE 

Plaintiff and Waronker met together by video conference call with the Deputy 
Commissioner of Education on December 4, 2017 during which a PowerPoint 
presentation was presented to the Deputy Commissioner. (Pl,'s Counter 56.1 
Statement at ¶¶ 20-21.) Plaintiff was introduced by Waronker to the Deputy 
Commissioner as the Deputy Superintendent for the District. While Plaintiff did not 
create the PowerPoint it "contained Plaintiff's work product." The presentation set 
forth numerous concerns of corruption and improprieties in the District. (Id. at ¶¶ 

22-25.) 
The Plante Moran Preliminary Report 
In December 2017, Plante Moran, the District's forensic auditor, provided 
Plaintiff and Waronker with its preliminary findings. Thereafter on January 11, 
2018. Plaintiff received a copy of a preliminary report issued by Plante Moran 
because he was Deputy Superintendent and because Lawrence Dobroff, the 

Assistant Superintendent of Business of the District ("Dobroff"), was directed by 
Waronker to provide the report to Plaintiff so he (Plaintiff) could forward the report 
to the Board. Plaintiff passed the preliminary report issued by Plante Moran to 
Regina Armstrong ("Armstrong"), who was the District's Acting Superintendent of 
Schools at that time (the Board having placed Waronker on administrative leave 
with pay), so she could send it to the Board. He sent the report by the District's 
email system. Plaintiff was interested in the findings in the report because he was 
Deputy Superintendent of the District.2 (Id. at 31-36.) 
C. Plaintiff's Speech was Not as a Citizen 

In support of his First Amendment claim, Plaintiff relies upon the absence of 
any reference to the identification or exposure of corruption, mismanagement, or 
educational and financial malfeasance in his official job description. That job 
description is as follows: 
to supervise assigned assistant superintendents and chief information 
officer, review and interpret all laws, regulations, statutes, rules and 
policies affecting the school division, respond to inquiries for 
interpretation from division staff on matters not clearly covered by 
regulation, policy or legislation, annually evaluate assigned assistant 
superintendents, chief information officer and principals for job 
effectiveness, oversee administration of the fiscal and human resources 
of assigned departments, review evaluations submitted by assigned 
assistant superintendents and chief information officer on personnel 
under their supervision, oversee, implement and evaluate a strategic 
plan, assist in the preparation and administration of budget[s] fro[m] 
assigned departments, assist in the determination of types of programs 
needed by the school division and make recommendations, support the 
Superintendent in the review and revision of operational goals and 
objectives, and efforts to measure progress toward their attainment, 
prepare and provide workshop presentations for the Board, establish 
and maintain effective working relationships with community and 
state agencies, area businesses, industries and other organizations, 
organize and/or chair various committees as directed, explain and 
interpret programs to staff, parents and the general public, collaborate 
and work cooperatively with advisory boards, and respond to parent 
and community concerns. 

2 The Court notes that Plaintiff also avers that "he communicated as a citizen." (DE 
43 at ¶ 30.) However, whether he communicated as a citizen is a legal issue. 
But that focus is too narrow. As noted earlier, "speech can be ‘pursuant to’ a 
public employee's official job duties even though it is not required by, or included in, 
the employee's job description or in response to a request by the employer.” 

Weintraub, 593 F.3d at 203. Moreover, the proper inquiry entails not only plaintiff's 
job responsibilities but "the nature of the speech and the relationship between the 
two," as well as "[o]her contextual factors. Ross, 693 F.3d at 306. Viewing all those 
factors in the light most favorable to Plaintiff, Plaintiff's First Amendment 
retaliation claim must fail. 
First, to the extent the Deputy Superintendent is charged, as Plaintiff was, 
with oversee[ing the] fiscal . . . resources of assigned departments" and "assist[ing] 

in the preparation and administration of budget[s] for assigned departments," such 
improprieties as, for example, "former employees being paid although no longer 
working," squarely fall within Plaintiff's job responsibilities even though the word 
"corruption" is absent. 
Further, the improprieties that were the subject of the discussions with the 
FBI and the NYDOE were discovered as a result of the extensive reviews conducted 

by Waronker and Plaintiff. During their review of student transcripts to determine 
graduation needs for students, they discovered pervasive academic and financial 
fraud, including falsification of student population and graduation rates. During the 
review of facilities, they found, among other things, crumbling, mold-infested 
trailers, unmaintained and decaying boilers, and vermin infestation. Plaintiff also 
became aware “of other gross financial improprieties,” including the District’s head 
of food services utilizing District equipment and facilities for a catering business. 
(Comp. ¶¶ 25-35.)3 Thus, while his job description may not have included 

uncovering improprieties, it did include " oversee[ing] administration of the fiscal 
and human resources of assigned departments," " oversee[ing] , implement[ing] and 
evaluat[ing] a strategic plan, . . . assist[ing] in the determination of types of 
programs needed by the school division and mak[ing] recommendations, 
support[ing] the Superintendent in the review and revision of operational goals and 
objectives, and efforts to measure progress toward their attainment" as part of his 
duties. The uncovering of academic and financial fraud directly affected his ability 

to perform those duties. 
With respect to the Plante Moran preliminary report, his communication of 
that report was an internal communication and one that he was asked to perform 
because of his position in the district. See DE 43 at ¶¶ 28, 29 (he received a copy of 
the report because he was Deputy Superintendent and because he was directed to o 
provide the report to Armstrong). In other word he forwarded the report up the 

chain of command in his role as an employee. Moreover, he used the District's 
email system to send the report to Armstrong. Given these undisputed facts, the 
only conclusion to be drawn is that the communication of the report is not protected 
speech as it was in his role as an employee. 

3 While a complaint is not normally evidence, the allegations therein may be 
considered on a motion for summary judgment as a judicial admission. See W. 
World Ins. Co. v. Stack Oil. Inc. 922 F2d 118, 121-122(2d Cir. 1990). 
Similarly, based on the undisputed facts, Plaintiff speech with respect to the 
videoconference with the NYDOE and the meeting with the FBI was in his capacity 
as an employee. According to Plaintiff, he was on the videoconference as the 

District's Deputy Superintendent and because the PowerPoint presentation 
contained his "work product and was a joint presentation of Dr. Waronker and 
Plaintiff." and he confirmed what Waronker presented. (Id. at ¶¶20-23.) In other 
words, he was there in his capacity as Deputy Superintendent and his 
communications during that conference were in that capacity. 
Turning then lastly to the communication with the FBI, Plaintiff was asked 
to attend by his then supervisor, Waronker, and based on the record that invitation 

was based on Plaintiff's position and role in uncovering the various improprieties. 
As such he was at the FBI in his employment capacity and his speech concerning 
the various improprieties was an employee. See also Waronker v. Hempstead Union 
Free School District, 788 F. App'x 788, 792093 (2d Cir. 2019) ("Waronker did not 
bear an obligation as a private citizen to communicate with law enforcement about 
the School District's corruption and mismanagement." Waronker v. Hempstead 

Union Free School District, 788 F. App'x 788, 792093 (2d Cir. 2019). 
Inasmuch as the speech at issue was not as a citizen, Plaintiff's First 
Amendment retaliation claim necessarily fails and Defendants are entitled to 
summary judgment thereon.4 

4 Having concluded that Plaintiff's speech was an employee, it is unnecessary to 
address the issue of causation. Moreover, given that the claim of First Amendment 
retaliation fails, the Monell claim against the District necessarily fails as the 
VI. The State Law Claim 
Having granted the motion for summary judgment on Plaintiff's’ federal 
claim, there is no longer any independent basis for federal jurisdiction in this 

action. Although the Court has the discretion to exercise supplemental jurisdiction 
over Plaintiff’s remaining state law claim, it declines to do so. See 28 U.S.C. § 
1367(c)(3) (“The district court may decline to exercise supplemental jurisdiction over 
a claim . . . if . . . the district court has dismissed all claims over which it has 
original jurisdiction . . . .”); see also N.Y. Mercantile Exch., Inc. v. Intercontinental 
Exch., Inc., 497 F.3d 109, 119 (2d Cir. 2007) ( holding that dismissal of remaining 
state claims after the dismissal of federal claims is particularly appropriate where 

the resolution of the state law claims entails resolving additional legal and factual 
issues). 
Accordingly, plaintiffs’ state law claim is dismissed without prejudice. 

 CONCLUSION 
For the reasons set forth above, the Court declines to adopt the R&R of Judge 

Locke, grants Defendants' motion for summary judgment on Plaintiff's First 
Amendment retaliation claim and dismisses his state law claim without prejudice. 
The Clerk of Court is directed to enter judgment accordingly and to close this case. 

presence of an underlying constitutional violation is a predicate to Monell liability. 
See, e.g., Askins v. Doe, 727 F.3d 248, 253-54 (2d Cir. 2013) (“[T]he plaintiff's failure 
to secure a judgment against the individual actors would . .. preclude a judgment 
against the municipality if the ruling . . . resulted from the plaintiff's failure to 
show that they committed the alleged [constitutional] tort.”) (emphasis omitted). 
SO ORDERED. 
Dated: Central Islip, New York s/ Denis R. Hurley 
 February 9, 2022 Denis R. Hurley 
 United States District Judge